**SCOOPER DOOPER, INC., Appellant,**

v.

**KRAFTCO CORP., Appellee.**

**No. 73–1836.**

United States Court of Appeals, Third Circuit.

Argued Jan. 25, 1974.

Decided March 26, 1974.

Nathan L. Posner, Victor Wright, Donald Brown, Philadelphia, Pa., for appellant; Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., of counsel.

William H. Lowery, Richard R. Rulon, John F. Wilson, III, Philadelphia, Pa., for appellee; Dechert, Price & Rhoads, Philadelphia, Pa., of counsel.

Before BIGGS, GIBBONS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

Appellant Scooper Dooper, Inc., requests that this Court undertake a full-scale analysis of the antitrust implications of a qualified refusal to deal by Kraftco Corporation. Considerations of proper judicial administration require us to decline the invitation to measure Kraftco's conduct against the proscriptions of the Sherman Act. On the basis of collateral estoppel, we affirm the District Court's grant of summary judgment in favor of Kraftco.

## I. PROCEDURAL HISTORY

Defendant-appellee Kraftco (formerly National Dairy Products) manufactures and distributes ice cream products under the trademarks of Sealtest and Breyers and also under private labels. Among its several plants, Kraftco operates Breyers Division processing factories in Long Island City (New York) and in Philadelphia. Kraftco's collective bargaining agreements with the New Jersey and New York locals of the Milk Drivers and Dairy Employees Union contain the following provision:

"The Company agrees for the term of this Agreement not to remove its manufacturing operations from the area of [the Local] and to continue to manufacture within the area of [the Local], and the Company, including any affiliates or subsidiaries, agrees that it shall not establish or operate a plant for production of ice cream or frozen dessert products outside of [the Local] area for sale or distribution of such products in the Metropolitan Area; . . ."

The "Metropolitan Area" consists of New York City, the counties of Suffolk and Nassau in New York State, and the counties of Union, Essex, Bergen, Hudson, Passaic, Middlesex, Ocean, Somerset, Morris, Monmouth, Hunterdon, Sussex and Warren in New Jersey.

Plaintiff-appellant Scooper Dooper, Inc., a distributor of ice cream products, has found its business threatened by the above bargaining provision. Since 1963, Scooper Dooper distributed ice cream produced by Kraftco's Philadelphia plant to retailers in Delaware, Pennsylvania, and southern New Jersey. At some point in the late 1960's,[1] Scooper Dooper began selling this Philadelphia-based ice

---

1. The District Court found that Scooper Dooper did not commence selling the Philadelphia products in the Metropolitan Area until early in 1969. Scooper Dooper asserts

cream in northern New Jersey. Kraftco's New York and New Jersey unions, recognizing that this new policy meant that ice cream produced by Kraftco in Philadelphia would be sold within the Metropolitan Area, protested that their collective bargaining agreement with Kraftco had been violated. In 1969, the matter was submitted to arbitration. The arbitrator ruled that the new marketing policy violated the bargaining agreement and contravened the parties' intent to protect the labor standards achieved in the Metropolitan Area. The arbitrator ordered Kraftco to cease and desist from supplying products from its Philadelphia plant to Scooper Dooper for delivery in the Metropolitan Area.

Undaunted, Scooper Dooper and Kraftco sought (in the Southern District of New York) a declaratory judgment invalidating both the bargaining agreement and the arbitration award to the extent that they precluded Scooper Dooper from reselling Kraftco's Philadelphia ice cream in the Metropolitan Area. The co-plaintiffs argued that under the doctrine of United States v. Arnold, Schwinn & Company,[2] 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967), the exclusion of Kraftco's Philadelphia goods from the northern New Jersey market constituted a *per se* violation of Section 1 of the Sherman Act. District Judge Frankel disagreed. In National Dairy Products Corp. v. Milk Drivers & Dairy Employees Union, Local 680, 308 F.Supp. 982 (S.D.N.Y. 1970), Judge Frankel held that:

1) *Schwinn* was distinguishable, in that the plaintiffs before Judge Frankel had not alleged a conspiracy;

2) *Schwinn* was inapplicable, since territorial restrictions of the type discussed in *Schwinn* had not been imposed;[3] and

3) Even if the scheme were similar to that condemned in *Schwinn*, antitrust exemptions precluded interference by the judiciary.[4]

Accordingly, Judge Frankel ordered Kraftco to stop selling its Philadelphia products to Scooper Dooper for resale in the Metropolitan Area.

Neither of the co-plaintiffs appealed Judge Frankel's decision.

Business relations between Kraftco and Scooper Dooper deteriorated after the above-mentioned litigation. In response to measures allegedly taken by Kraftco to exclude appellant from the Metropolitan Area, Scooper Dooper resumed its practice of reselling Kraftco's Philadelphia ice cream in northern New Jersey. Kraftco, in February and March of 1971, warned Scooper Dooper that it would cease selling ice cream to Scooper Dooper if the latter continued to violate Judge Frankel's order. When Scooper Dooper failed to accede to Kraftco's demands, Kraftco notified Scooper Dooper that it would not sell its products to Scooper Dooper after March 19, 1971.

Scooper Dooper filed this action in the Eastern District of Pennsylvania on March 24, 1971. Plaintiff's complaint, as amended, charges that the enforcement of the collective bargaining provision (quoted above) constitutes a violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. Treble damages and injunctive relief are requested pursuant to 15 U.S.C. §§ 15 and 26.

that this finding of fact is clearly erroneous, suggesting instead that the new marketing policy began in 1967. Inasmuch as the actual date is irrelevant to the issues before us, we shall not attempt to resolve this factual dispute.

2. In *Schwinn*, the Supreme Court held that it was *per se* unreasonable for a bicycle manufacturer to restrict areas in which or persons with whom its products may be traded after the manufacturer parted with dominion over the products. 388 U.S. at 379, 87 S.Ct. 1856.

3. Judge Frankel explained that Scooper Dooper was not, in fact, excluded from the Metropolitan Area, since ice cream manufactured at Kraftco's Long Island City plant was still available for resale in the Metropolitan Area.

4. See 15 U.S.C. § 17, 29 U.S.C. §§ 52, 101–115.

After taking testimony for five days, the District Court denied plaintiff's motion for a preliminary injunction on May 5, 1971. The Court held that the collateral estoppel consequences of Judge Frankel's decision, as well as the fact that Kraftco was merely complying with Judge Frankel's order, undermined the probability that plaintiff would ultimately succeed in its bid for a permanent injunction. The District Court also found that Scooper Dooper had not demonstrated the irreparable injury necessary to obtain an injunction *pendente lite*. Without discussing either collateral estoppel or antitrust law, we affirmed the District Court's exercise of discretion at 460 F.2d 1204 (3d Cir. 1972).

Subsequently, Kraftco moved for summary judgment or, alternatively, judgment on the pleadings. The District Court, finding no genuine issue of material fact, and relying upon both the labor exemption from the antitrust laws and the collateral estoppel consequences of the litigation in the Southern District of New York, ruled in favor of Kraftco on July 25, 1973.

Scooper Dooper appeals from the July 25th order granting summary judgment.

## II. COLLATERAL ESTOPPEL

■ The doctrine of collateral estoppel precludes the relitigation of issues actually decided in former judicial proceedings. It is commonly recognized that the following three requirements must be satisfied before collateral estoppel may be utilized:

a) The issue decided in the prior litigation must be identical with the issue presented in the action in question;

b) The prior litigation must have resulted in a final judgent on the merits; and

c) The party against whom the estoppel is asserted must have been a party, or in privity with a party, to the prior adjudication.

*See, e.g.,* Blonder-Tongue v. University of Illinois Foundation, 402 U.S. 313, 323–324, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (quoting from Justice Traynor's opinion in Bernhard v. Bank of America National Trust & Savings Association, 19 Cal.2d 807, 813, 122 P.2d 892, 895 (1942)). Classical estoppel doctrine appended a fourth element, a requirement of mutuality. This element mandates that the party asserting the estoppel also be a party, or in privity with a party, to the prior adjudication. *See* Restatement of Judgments, § 93 (1942).

■ The doctrine of mutuality has come under severe attack in recent years. *See generally* Blonder-Tongue v. University of Illinois Foundation, *supra.* This Circuit has been in the forefront of the attack. Provided that the party against whom the plea is asserted has had a full and fair opportunity to present his claim in the prior litigation, collateral estoppel is available as a defense in this Circuit regardless of whether or not the party asserting the plea was a party (or privy) to the prior litigation.[5] *See* Bruszewski v. United States, 181 F.2d 419 (3d Cir.), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L. Ed. 632 (1950); Township of Hopewell v. Volpe, 446 F.2d 167, 171 (3d Cir. 1971).

■ The virtual obliteration of the mutuality doctrine in this Circuit undermines an argument advanced by Scooper Dooper to avoid the exercise of collateral estoppel herein. Pointing to the fact that Kraftco and Scooper Dooper were co-plaintiffs in the action before Judge Frankel, appellant contends that the non-adverse relationship of the parties in the prior litigation vitiates the collateral estoppel consequences of Judge Frankel's decision.[6] In response, appel-

---

5. In non-diversity cases (such as the instant action), we are free to apply our own rules of collateral estoppel without the constraints of state law. *See* Heiser v. Woodruff, 327 U.S. 726, 733, 66 S.Ct. 853, 90 L.Ed. 970 (1946).

6. Professor Moore is a prime advocate of the "adversity" requirement advanced by appel-

lee relies upon a line of cases which first tangentially [7] and then frontally [8] attacks the adversity requirement. While in other jurisdictions such cases might be necessary to overcome the adversity requirement, this Circuit's nullification of the mutuality requirement renders non-adversity irrelevant to the doctrine of collateral estoppel. In this Circuit, a total stranger to a prior litigation may, in a subsequent suit, estop a party from re-litigating a claim which he lost in the prior controversy, provided that the initial opportunity to present the claim was full and fair. We see no reason to treat a co-plaintiff more harshly than a total stranger.[9] Accordingly, we hold that the mere fact that Scooper Dooper and Kraftco were non-adverse co-plaintiffs before Judge Frankel does not preclude the applicability of collateral estoppel in the instant case.

There has been no demonstration that Scooper Dooper was denied a full and fair opportunity—procedurally, substantively, or evidentially—to present its case before Judge Frankel. Thus, collat-

eral estoppel will apply here if the three requirements identified by Justice Traynor in *Bernhard* are satisfied.[10] There is no dispute with regard to the second and third factors: clearly, Scooper Dooper (the party against whom the estoppel is being asserted) was a party to the prior litigation, which litigation resulted in a final judgment on the merits. The sole controversy is whether the issues as to which Kraftco asserts estoppel are "identical" to the issues adjudicated by Judge Frankel.

Appellee contends that Scooper Dooper is collaterally estopped from relitigating both the antitrust validity of the collective bargaining provision and the availability of the labor exemption from the antitrust laws. Scooper Dooper responds by charging that the factual situation (as to both the antitrust liability and exemption) has changed since 1970, thereby vitiating the identity of issues necessary for application of collateral estoppel. To evaluate this contention, we must first define, in general, the extent to which changed factual circumstances

lant. He states as a general proposition that collateral estoppel is unavailable in sub-sequent litigation between co-parties unless the co-parties were actual adversaries in the prior litigation. *See* 1B Moore's Federal Practice ¶ 0.411 [2]. *See also* Dobbins v. Barnes, 204 F.2d 546, 548 (9th Cir. 1953); Kimmel v. Yankee Lines, 224 F.2d 644 (3d Cir. 1955) (applying Pennsylvania law); Restatement of Judgments, § 82 (1942).

7. *See* National Bondholders Corp. v. Seaboard Citizens National Bank, 110 F.2d 138, 144 (4th Cir. 1940) (finding an exception to the adversity requirement when " . . . some finding of fact is made in the first suit which is an essential element in a claim or action subsequently brought by one [co-party] against the other."); Livesay Industries, Inc. v. Livesay Window Co., 202 F.2d 378, 382 (5th Cir.), cert. denied, 346 U.S. 855, 74 S.Ct. 70, 98 L.Ed. 369 (1953) (same).

8. *See* Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co., 416 F.2d 707 (7th Cir. 1969).

9. Thus, Professor Moore—a long-standing advocate of the mutuality doctrine as well as of the adversity requirement—concedes that adversity would be unnecessary in jurisdic-

tions that have repudiated mutuality. He states:

"One further exception to the adversity requirement can arise in the small number of jurisdictions that have abandoned the principle of mutuality in the doctrine of judicial finality. In these jurisdictions, an adverse judgment can be urged against the unsuccessful litigant by one who was a stranger to the proceedings in which the judgment was rendered; and no reason is apparent to prevent similar use of such a judgment by one who was a non-adverse co-party with the unsuccessful litigant in those proceedings."

1B Moore's Federal Practice, ¶ 0.411 [2].

10. Appellant suggests that collateral estoppel is unavailable inasmuch as the relitigation sought to be avoided involves legal, rather than factual, issues. This argument misconceives the nature of the issues involved in the instant matter. Both the claims of antitrust liability and the assertion of the labor exemption involve issues of *mixed fact and law*. Such issues are subject to the bar of collateral estoppel. *See* Yates v. United States, 354 U.S. 298, 336, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957).

may be said to destroy the "identity" of issues.

■ It is well settled that changed factual circumstances can operate to preclude the application of collateral estoppel. *See* Long v. Parker, 390 F.2d 816, 821 (3d Cir. 1968); Hodgson v. Royal Crown Bottling Co., 465 F.2d 473, 475 (5th Cir. 1972); *see generally* 1B Moore's Federal Practice, ¶ 0.448. Carried to its extreme, the concept of changed factual circumstances could totally undermine the application of collateral estoppel. Rare would be the case in which counsel could not conjure up some factual element that had changed between adjudications. Analysis of Commissioner of Internal Revenue v. Sunnen,[11] however, indicates the manner in which the doctrine of changed circumstances may be recognized without undercutting the doctrine of collateral estoppel. In finding changed circumstances, the Court declared in *Sunnen* that collateral estoppel would be confined to cases where the issue raised in the second suit is " . . . identical in all respects with that decided in the first proceeding and *where the controlling facts* and applicable legal rules *remain unchanged.* . . . [W]here the situation is *vitally altered* between the time of the first judgment and the second, the prior determination is not conclusive." 333 U.S. at 599–600, 68 S.Ct.

at 720 (Emphasis added). Thus, where the changed circumstances are not material, and therefore do not amount to *controlling facts*, collateral estoppel remains applicable. *Cf.* Bankers Mortgage Company v. United States, 423 F.2d 73, 80–81 (5th Cir.) cert. denied 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970) (collateral estoppel applied because the changed circumstances did not constitute controlling facts).

We must, therefore, determine whether the changed circumstances alleged by Scooper Dooper constitute "controlling facts" so as to destroy the identity of issues necessary for the application of collateral estoppel.

## III. CHANGED CIRCUMSTANCES

Scooper Dooper contends that unilateral "actions" taken by Kraftco after the date of Judge Frankel's decision have operated, in combination, to preclude it from doing business in the Metropolitan Area.[12] It is appellant's theory that: (1) the "actions" operate to exclude it from the Metropolitan Area; and (2) this exclusion is analogous to the territorial exclusion condemned by the Supreme Court in United States v. Arnold, Schwinn & Company, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967).

■ Although appellant's theory causes us some difficulty,[13] we do not

---

11. 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

12. Appellant charges that: (1) for a period ranging from February of 1970 until the time at which the instant suit was commenced, Kraftco maintained a dual price structure, charging Scooper Dooper more for products manufactured in New York than for the identical products made in Philadelphia; (2) after Judge Frankel's order, Kraftco raised the preticketed (manufacturer's suggested) price of the Sealtest ice cream products manufactured in Kraftco's New York plant; (3) Kraftco has taken no steps since Judge Frankel's order to qualify its New York plant in Pennsylvania, thereby precluding the sale of the New York products in Pennsylvania; (4) products formerly available to Scooper Dooper at the Philadelphia plant were not made available to the

distributor at the New York plant after Judge Frankel's order; and (5) after Judge Frankel's order, Kraftco required prepayment (twenty-four hours before delivery) from Scooper Dooper at its New York plant, while in Philadelphia Scooper Dooper was able to pay at the time of delivery.

In its brief on appeal, Kraftco disputes certain of these charges and attempts to justify the remainder. Appellee's Brief at 17–18, n. 10. Inasmuch as we are reviewing a grant of summary judgment, we cannot resolve these factual disputes herein. Given our treatment of the antitrust exemption issue, infra, we find that these factual disputes are immaterial.

13. We do not believe that the last three charges listed in Fn. 12 could have had an appreciable effect in excluding Scooper Dooper from the Metropolitan Area. More

pause to resolve it at this juncture. Kraftco has moved for summary judgment in relevant part on the theory that Scooper Dooper is collaterally estopped from relitigating the availability of the antitrust exemption—an exemption which, if applicable, operates to immunize Kraftco from all of Scooper Dooper's antitrust claims.[14] If, as Kraftco contends, we are bound by collateral estoppel to apply the exemption herein, Scooper Dooper's liability claims will become moot. Accordingly, we shall first examine the availability of the antitrust exemption.

As discussed above, Kraftco's defense of collateral estoppel on the exemption issue will not be successful if changed circumstances of controlling significance are present. Inasmuch as we are reviewing a grant of summary judgment we must determine (1) whether there exists a genuine factual issue as to such changed circumstances; and (2) whether, as a matter of law, such changed circumstances have occurred. A negative answer to both determinations will require this Court to affirm the grant of summary judgment on the basis of the collateral estoppel consequences of Judge Frankel's ruling on the antitrust exemption.

█ The use of the summary judgment device by a party asserting collateral estoppel is not uncommon. Provided that there is no genuine factual dispute as to the identity of the parties, the nature of the prior judgment, or the similarity of the issues, summary judgment is available to establish the collateral estoppel defense. Cf. 6 Moore's Federal Practice, ¶ 56.17[52].

importantly, we question whether the *Schwinn per se* rule against territorial restrictions would apply even if the combination of "actions" actually did exclude appellant from the Area. In Tripoli Company v. Wella Corporation, 425 F.2d 932, 935 (3d Cir.), cert. denied 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970) this Court, sitting in banc, expressly limited Schwinn to its factual context. We indicated that where a manufacturer's restriction is related to a legitimate business purpose, Schwinn may be inapplicable. 425 F.2d at 936–937, n. 3. The apparent objective of the exclusions herein—the preservation of work standards —would appear to represent just such a purpose.

14. Congress has seen fit to grant labor unions a limited exemption from antitrust liability. *See* 15 U.S.C. § 17, 29 U.S.C. §§ 52, 101–115. Provided that unions act in their own self-interest in an area which "is a proper subject of union concern," and provided that unions do not combine and conspire with non-labor groups, the statutory exemption is available. *See* United States v. Hutcheson, 312 U.S. 219, 232, 61 S.Ct. 463, 85 L.Ed. 788 (1941) ; *see also* Intercontinental Container Transport Corp. v. New York Shipping Association, 426 F.2d 884, 887 (2d Cir. 1970).

In the prior litigation, Judge Frankel held that even if Kraftco's unions were guilty of antitrust violations, the labor exemption from the antitrust laws would immunize the unions from antitrust liability. In the instant case, it is the employer (Kraftco) and not the unions who seeks to invoke the antitrust exemption.

We reject Scooper Dooper's contention that the labor exemption is unavailable to employers. Such a proposition would undermine the vitality of the exemption by discouraging bargaining on the part of management. To preserve the integrity of the negotiating process, employers who bargain in good faith must be entitled to claim the antitrust exemption. *See* Philadelphia World Hockey Club, Inc. v. Philadelphia Hockey Club, Inc., 351 F.Supp. 462, 499 (E.D.Pa. 1972).

We similarly reject any contention that the issues faced by Judge Frankel and this Court differ merely because the party claiming the exemption herein (Kraftco) differs from the parties (the unions) which claimed same in the prior litigation. The labor exemption to the antitrust laws applies to the bargaining agreement, the product of negotiations between unions and management. *See* Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of North America, AFL–CIO v. Jewel Tea Co., 381 U.S. 676, 689, 85 S.Ct. 1596, 1601, 14 L.Ed. 2d 640 (1965) ("Employers and unions are required to bargain about wages, hours and working conditions, and this fact weighs heavily in favor of antitrust exemption for agreements on these subjects."). Judge Frankel ruled, in effect, that the bargaining provision quoted at the outset of this opinion gives rise to the labor exemption. Kraftco is asserting no more in the instant case.

**848**

It is well settled that the party moving for summary judgment has the burden of proving that there exists no genuine issue of fact. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States ex rel. Jones v. Rundle, 453 F.2d 147, 150 (3d Cir. 1971). Where the moving party initially sustains its burden, summary judgment will be granted unless the opposing party can set forth countervailing evidence establishing a genuine factual dispute. *See generally* 6 Moore's Federal Practice, ¶ 56.15[3]. In the instant case, Kraftco undoubtedly met its initial burden. By introducing Judge Frankel's opinion, it established, with respect to the antitrust exemption, that: (a) the party against whom collateral estoppel is sought (Scooper Dooper) was a party to the prior litigation; (b) the prior litigation resulted in a final judgment on the merits; and (c) the issue involved herein—the availability of the antitrust exemption to the collective bargaining provision quoted at the outset of this opinion—is identical to the issue litigated before Judge Frankel.

We focus, then, upon whether Scooper Dooper, the opposing party, has set forth countervailing evidence that would present a genuine issue of fact. On appeal, Scooper Dooper contends that it produced evidence before the District Court creating a dispute as to whether or not controlling facts had changed,[15] so as to defeat the exemption upon which Kraftco relies. The evidence to which Scooper Dooper refers is an affidavit signed by Delmar Mota, a former Scooper Dooper employee. This affidavit indicates that in October 1972, Mota purchased Kraftco ice cream bearing the Philadelphia plant code from three retail stores located in northern New Jersey.

In evaluating the Mota affidavit, the District Court assumed (although plaintiff did not so state) that Scooper Dooper's purpose in introducing the affidavit was to demonstrate a collusive attempt by Kraftco and its unions to drive plaintiff out of the Metropolitan Area.[16] A showing that Kraftco's unions had acted in concert with Kraftco to intentionally drive Scooper Dooper out of the northern New Jersey market would undermine any asserted exemption from antitrust liability. *See* United Mine Workers v. Pennington, 381 U.S. 657, 663, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). Thus, if Scooper Dooper were able to demonstrate that such collusion did in fact occur after the date of Judge Frankel's decision, there would be present changed circumstances of such significance as to vitiate the plea of collateral estoppel on the issue of exemption.

We agree with the District Court that the granting of summary judgment was proper on the issue of the antitrust exemption, since we are convinced that: (a) Scooper Dooper did not present countervailing evidence of a genuine issue of material fact; and (b) Scooper Dooper had full opportunity to make such a presentation.

For a number of reasons, we find that Scooper Dooper's affidavit is insufficient to establish a genuine issue of material fact. First, we are unable to locate in the record any articulation by Scooper Dooper of the relevance of the Mota affidavit to the issue of antitrust exemption. We will not speculate that the purpose of the affidavit is to establish collusion in the absence of a clear indication of said purpose in the record.

Secondly, even if we were to assume that plaintiff's purpose in filing the affidavit was to establish collusion,

15. See p. 845, *supra.*

16. The District Court, although assuming the "collusive" purpose of the Mota affidavit, nevertheless was unpersuaded by Scooper Dooper's submission. The Court relied instead upon counter-affidavits which explained that Kraftco's Philadelphia ice cream had been shipped to New Jersey on an emergency basis after the New York plant was beset with equipment problems and a wildcat strike.

we do not believe that the affidavit contains sufficient factual allegations of collusion to withstand the grant of summary judgment herein. The only possible hint of collusion offered by plaintiff is the fact that Kraftco's Philadelphia ice cream was discovered in northern New Jersey. Although we recognize our responsibility to view the Mota affidavit in the light most favorable to Scooper Dooper,[17] we nevertheless are unable to reasonably infer collusion from that fact. The presence of Philadelphia-manufactured ice cream in northern New Jersey is, standing alone, a completely equivocal fact. It no more suggests collusion than it suggests infinite other theories to account for the discovery of the ice cream in New Jersey. Where documentary evidence is, like the Mota affidavit, so equivocal as to be devoid of inferential value, it will not suffice to establish the existence of a genuine issue of material fact. *See* Tripoli Company v. Wella Corporation, 425 F.2d 932, 935 (3d Cir.), cert. denied 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970).

This is not to say that the affidavit (if supplemented by other factual allegations) could not have supported a charge of collusion. Recognizing that Scooper Dooper could have defeated summary judgment had factual assertions probative of collusion been submitted, we are somewhat wary of the possibility that we may be summarily resolving a factual dispute.[18] To alleviate this concern, we reviewed the *entire* record to determine: (1) whether, in fact, any allegations of collusion had been made and (2) if not, whether Scooper Dooper had the opportunity to discover and present such material.

Aside from the Mota affidavit discussed above, there is nothing either in Scooper Dooper's answering brief nor in any other portion of the record to suggest that Scooper Dooper either had or was aware of any evidence of collusion. Nor can we blame the District Court's time schedule for plaintiff's failure to properly advance a theory of collusion. Our review discloses the following chronology:

> April 16, 1973—Kraftco gave notice of its motion for summary judgment.
>
> April 26, 1973—Scooper Dooper filed an answering brief.
>
> June 11, 1973—Scooper Dooper informed the District Court that it would be able to submit the affidavit discussed above within a few days of the hearing on Kraftco's motion.
>
> June 12, 1973—The hearing on Kraftco's motion was held.
>
> June 20, 1973—Scooper Dooper's affidavit was filed.
>
> June 27, 1973—Kraftco's counter-affidavits were filed.
>
> July 25, 1973—The District Court's order granting summary judgment was filed.

Scooper Dooper had, at a minimum, two months to develop a theory of collusion. Despite the fact that the Federal Rules specifically provide for the granting of continuances in favor of the party opposing summary judgment,[19] the record

---

17. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam).

18. This Court will go to great lengths to protect the opposing party's ability to develop genuine issues of fact. *See, e. g.,* Ward v. United States, 471 F.2d 667, 670 (3d Cir. 1973).

19. Fed.R.Civ.P. 56(f) provides that:
Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

is barren of any request by Scooper Dooper for a continuance or an adjournment in order to develop facts to resist summary judgment. Given the ample time period and the failure to apply for any type of continuance, we conclude that Scooper Dooper had an adequate opportunity to develop a theory (based upon factual allegations) sufficient to place the existence of "collusion" in issue.

In sum, the record discloses no genuine issue of fact material to the antitrust exemption. Scooper Dooper stated simply that Philadelphia ice cream was found in northern New Jersey. Kraftco confirmed this observation, but then proceeded to explain the delivery in non-collusive terms.[20] Scooper Dooper chose not to reply. Indeed, it did not even take recourse to Federal Rule 56(f) so as to probe the assertions found in Kraftco's affidavits. Instead, Scooper Dooper said and did nothing, leaving open to speculation the purpose of its own affidavit and leaving uncontradicted the factual assertions of non-collusive conduct set forth in Kraftco's affidavits.

Accordingly, there being no genuine issue of material fact and no changed circumstances of controlling legal significance, we hold that the issue of antitrust exemption raised herein is, as a matter of law, "identical" to the issue heretofore litigated before Judge Frankel.

## IV. CONCLUSION

Each of the requirements necessary to estop Scooper Dooper from relitigating the availability of the antitrust exemption is satisfied herein. With the protection of this exemption, Kraftco is immune from the Sherman Act charges advanced by Scooper Dooper. The grant of summary judgment in favor of Kraftco will therefore be affirmed.