### In re QUEENY/CORINTHOS.

#### Civ. A. Nos. 75–273, 75–364, 75–1284, 75–2110 and 77–2362.

United States District Court,
E. D. Pennsylvania.

Nov. 14, 1980.

Richard W. Palmer, Palmer, Biezup & Henderson, Philadelphia, Pa., for Corinthos interests.

James F. Young, Krusen, Evans & Byrne, Philadelphia, Pa., for Queeny interests.

Thomas A. Masterson, Jr., Morgan, Lewis & Bockius, Philadelphia, Pa., for Wm. Powell Co.

C. Gary Wynkoop, Blank, Rome & Comisky, Philadelphia, Pa., for Bethlehem Steel.

Herbert Short, Liebert, Short, Fitzpatrick & Lavin, Philadelphia, Pa., for General Electric.

Ben F. Stahl, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for B. P./Sohio.

MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Presently before the court is the motion of Bankers Trust Company, Monsanto Company, and Keystone Shipping Co. (Queeny interests), owners and operators of the SS. Edgar M. Queeny (Queeny), objecting to the admission of any evidence which may be propounded at the forthcoming products liability trial by Bethlehem Steel Corp., General Electric Co., and The William Powell Company (products defendants), relating to issues which the Queeny interests contend were previously decided by this court in the limitation of liability trial, as set forth in our Memorandum Opinion and Order of February 19, 1980, 503 F.Supp. 337. The Queeny interests argue that the products defendants are collaterally estopped from relitigating the following: (1) the cause of the collision between the Queeny and the Corinthos on January 31, 1975; (2) the defective condition of the Queeny's astern guardian valve; (3) the damaged condition of the Queeny's astern turbine; (4) the astern guardian valve's defective condition as cause of the astern turbine's damaged condition. The Queeny interests further assert that all other findings deemed pertinent to the products liability trial are binding upon the products defendants. For the reasons to follow, the motion is denied.

In support of their motion, the Queeny interests rely upon *Parklane Hosiery v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The Queeny interests' reliance is misplaced however, for *Parklane Hosiery*, as the Queeny interests themselves note, granted broad discretion to the trial court to determine when the "offensive" use of collateral estoppel should be applied. Offensive collateral estoppel connotes the situation in which a plaintiff seeks to estop a defendant from relitigating the issues which the defendant previously litigated and lost against a different plaintiff. *Parklane Hosiery*, 439 U.S. at 329, 99 S.Ct. at 650.

■ However, the situation now before the court is quite unlike the offensive estoppel situation with which the court in *Parklane Hosiery* was faced. The case *sub judice* does not involve a new plaintiff who seeks an estoppel against a defendant who had previously litigated and lost to a different plaintiff. Rather, this case involves an attempt to invoke estoppel by a plaintiff who *was* a party to an earlier proceeding against a defendant who was *not* a party to, nor in privity with a party, nor a participant in that earlier proceeding.

As stated by the Court in *Parklane Hosiery*, 439 U.S. at 331, 99 S.Ct. at 651, "[t]he general rule should be that in cases where ... the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." It should be obvious that collateral estoppel would be manifestly unfair to the defendants in this case, because the defendants did not previously litigate the issues now sought to be estopped by the Queeny interests.

■ It is the contention of the Queeny interests that the products defendants have had a "full and fair opportunity" to litigate the issues now sought by the Queeny interests to be estopped. *See Parklane Hosiery*, 439 U.S. at 332, 99 S.Ct. at 652. Yet a basic requirement of collateral estoppel is that the party against whom the estoppel is asserted must have been a party, or in privity with a party to the prior adjudication. *Scooper Dooper Inc. v. Kraftco Corp.*, 494 F.2d 840, 844 (3d Cir. 1974). The products defendants however, were not party to, nor in privity with a party to the limitations trial.

■ The Queeny interests urge upon us the proposition that collateral estoppel is applicable here because the products defendants were given the *opportunity* to litigate the issues now sought to be estopped from supposed relitigation, but chose to forego that opportunity by moving, successfully, for a separate trial. This argument flies in the face of accepted collateral estoppel doctrine, for while it is true that a plaintiff should not be required to relitigate issues already fully litigated in an earlier action, it may nevertheless not thus be

spared the necessity of litigating its claim against one who was not a party to nor in privity with a party to the earlier litigation. A defendant who is not a party to nor in privity with a party to the earlier litigation because it has been granted a separate trial may have had the opportunity, prior to the grant of a separate trial, to *prepare* to litigate its claim, but it has not had an opportunity to *actually* so litigate until such time as the separate trial to which it is a party is held. It is precisely that opportunity which this trial will provide to the products defendants.

Also before the court is the motion of Villaneuva Compania Naviera, S.A. (Villaneuva), owner of the Corinthos, for an order prohibiting the products defendants from offering evidence in any further proceedings against the Corinthos interests concerning (1) causation of the collision resulting from the Queeny's propulsion deficiencies; (2) the knowledge and privity of the Queeny's shore management of such propulsion deficiencies, and (3) the allegations that the Corinthos contributed to the collision for failure to be equipped with an inert gas system. For the reasons to follow, the motion is denied.

Villaneuva contends that the products defendants are prevented from offering the objected to evidence by reason of collateral estoppel. According to Villaneuva, the issues of causation, inerting, and firefighting arose out of the collision of the Queeny and Corinthos and were fully and completely litigated in the limitations trial. Villaneuva asserts that the products defendants are in privity with the Queeny, which was the petitioner-plaintiff in the limitations proceedings, and that they both had a common interest in attempting to establish that the propulsion machinery of the Queeny was in proper operating condition. Villaneuva further argues that even though granted a separate trial, the products defendants "functioned as behind-the-scenes coordinators of the Queeny defense with respect to their contentions of causation, Corinthos inerting and firefighting, and so conducted themselves."

As with the motion of the Queeny interests, discussed supra, Villaneuva's motion must be denied because an essential element of collateral estoppel is missing. Despite Villaneuva's claims to the contrary, the products defendants were not party to, nor in privity with a party to the limitations proceedings. *See Scooper Dooper Inc. v. Kraftco*, 494 F.2d at 844. There simply is no evidence to support the bare allegations of Villaneuva that the products defendants were the behind-the-scenes coordinators of the Queeny defense and thus in privity with the Queeny. Although they both may have had an interest in attempting to establish that the propulsion machinery of the Queeny was in proper working order, the actual interests of each of them in that issue were not precisely the same, as evidenced by this very products liability action. Moreover, an identity of interests does not necessarily mean that the parties who share those interests are in privity, an inference which Villaneuva asks us to draw rather uncritically.

Villaneuva's reliance on *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) is inapposite. That case held that the same interests which favor the application of res judicata and collateral estoppel are "similarly implicated when non-parties assume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved." *Id.* at 154, 99 S.Ct. at 974 (footnote omitted). The Court in *Montana* further stated that "the persons for whose benefit and at whose direction a cause of action is litigated cannot be said to be strangers to the cause, [and] [o]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own . . . is as much bound . . . as he would be if he had been a party to the record." *Id.*

In this case, there is nothing, except perhaps for the assertions of Villaneuva, to suggest that the limitations proceedings were directed by the products defendants,

or litigated for their benefit, or that the limitations action was actually litigated by the products defendants, in the name of the Queeny interests, in aid of its own interests. Quite unlike the *Montana* case, there was here no control over the prior litigation by the party who is sought to be collaterally estopped.