**BP OIL, INC. and Sohio Petroleum Company**

v.

**BETHLEHEM STEEL CORPORATION and The William Powell Company and General Electric Company.**

Civ. A. No. 77–2362.

United States District Court,
E. D. Pennsylvania.

March 17, 1982.

Benj. F. Stahl, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for BP Oil, Inc. and Sohio Petroleum Co.

C. Gary Wynkoop, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for defendants.

James F. Young, Krusen, Evans & Byrne, Philadelphia, Pa., for Queeny Interests.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This is a products liability action brought against the defendants, arising out of a collision which occurred on January 31, 1975 on the Delaware River at Marcus Hook, Pennsylvania between the SS Edgar M. Queeny ("Queeny") and the S.T. Corinthos. These defendants participated in one aspect or another in the design and construction of the Queeny, her turbine set and controls, and the astern guardian valve.

In 1975, the owners and operators of the Queeny had filed a complaint in this court seeking exoneration from and/or limitation of liability. (See C.A. 75–364). At the time of trial of the limitation action, this products liability action was severed by the granting of a motion filed by the products defendants. After hearing evidence in the limitations trial concerning the collision of the Queeny and the Corinthos, this court denied limitation to the Queeny interests, and determined that the astern guardian valve and the astern turbine of the Queeny were defective at the time of the collision, and were contributing causes of the collision. *Complaint of Bankers Trust Co.*, 503 F.Supp. 337, 345 (D.C.Pa.1980). Although the Court of Appeals for the Third Circuit reversed our denial of limitation, it did not disturb our findings as to the astern guardian valve and the astern turbine. *Complaint of Bankers Trust Co.*, 651 F.2d 160 (3rd Cir. 1981).

In 1979 the Queeny interests had brought suit against these product defendants, which suit was settled at the time of trial in 1980. In return for monetary considerations, Queeny has agreed to defend, indemnify and save harmless the product defendants from any claims arising out of the Queeny/Corinthos collision.

Presently before the court is the motion of plaintiffs BP/Sohio and Villaneuva Compania Naviera, S.A. to declare the Queeny interests the real party in interest, and collaterally estopping parties in this suit from relitigating issues conclusively decided.

The plaintiffs argue that the product defendants have no standing to claim prejudice if the evidence from the limitations trial is admitted against them because they voluntarily left that trial at their peril. They argue further that since the product defendants have no financial interest in this action, the real party in interest is Queeny. Thus, they contend, Queeny, having been a party in the limitations trial, is collaterally estopped from having the issues of defect and causation retried before this court.

The defendants, on the other hand, argue that the plaintiffs are trying an end run

around this court's Order of November 14, 1980, which precluded the use of findings and testimony in the limitations action against the product defendants. *In re Queeny/Corinthos*, 503 F.Supp. 365, 366–7 (D.C.Pa.1980). We do not agree. Rather than the plaintiffs trying an end run around our Order, the product defendants and Queeny are trying a "statue of liberty" or "hidden ball play." They want to make it appear that the product defendants are back to pass the ball (actually defend the case), when in fact, Queeny is poised to take the ball out of the product defendants hands and attempt to run for a touchdown. Queeny is attempting in this action to recover the fumble it lost in its previous action against the product defendants. (See our Memorandum Opinion and Order of November 14, 1980, which precluded Queeny from using the findings and testimony in the limitations action against the product defendants. *In re Queeny/Corinthos*, 503 F.Supp. 365 (D.C.Pa.1980)). In the case *sub judice*, although the players are wearing the uniforms of the product defendants, they are really the Queeny players in disguise. Queeny has purchased the uniforms and equipment, and is paying the players and coaches. Queeny is not only the owner and coach but is the quarterback of the team, calling the plays.

■ Rule 17(a) of the Federal Rules of Civil Procedure provides in pertinent part:

"(a) Real Party In Interest. Every action shall be prosecuted in the name of the real party in interest."

The aim of the rule is to protect defendants from subsequent similar actions by the party actually entitled to recover. *White Hall Building Corp. v. Profexray Division of Litton Industries, Inc.*, 387 F.Supp. 1202 (D.C. E.D.Pa.1974), *aff'd* 578 F.2d 1375 (3rd Cir. 1978); *Fed.Proc., L.Ed.*, § 59:27. Clearly, the rule has been interpreted by the courts for the protection of defendants. However, the language of the rule does not make it exclusively applicable to the protection of defendants. The Federal Rules of Civil Procedure provide that they are to be construed to secure the just, speedy, and inexpensive determination of every action. *Rule 1; Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In that light, we are compelled to construe Rule 17(a) to secure an inexpensive determination of this action. In this action, the issue again is the defect of the astern machinery. By ordering that the findings and testimony in the limitations trial as to whether the collision was caused by defects in Queeny's astern machinery be used in this action, we would certainly not only speed the trial but make it less expensive and make a just determination.

■ The defendants contend that the language of Rule 17(a) protects only defendants since the language of the rule in using the term "prosecuted" is intended to cover only plaintiffs who are the parties who prosecute actions. We do not agree. Just as plaintiffs prosecute their claims, defendants prosecute their defenses. The word "prosecute" means "to follow up; to carry on an action or other judicial proceeding". *Black's Law Dictionary*. Thus a defendant as well as a plaintiff can follow up and carry on an action. If the rule used the terms "instituted" or "commenced" instead of "prosecuted" we might hold otherwise. Since Queeny has settled with the product defendants and has assumed all obligations of those defendants in this case, such as paying the legal fees and any judgments which may result, Queeny is the real party in interest in the defense of this action.

Defendants claim that Queeny's position is no different from that of an insurance company which provides and pays legal counsel to defend an insured, and pays the judgment which may result against its insured. Defendants argue that Queeny has a contingent liability which will not mature unless and until plaintiffs obtain judgment against the product defendants. We do not agree with that analogy. When an insurer undertakes to insure a party it does so to protect the insured against any future loss. Here at the time Queeny became the "insurer" of the product defendants, the loss had already occurred. It became very convenient for Queeny to take over any liabili-

ties which the product defendants might have in this action in order to do here indirectly what it failed to do directly in its own case against these product defendants.

When the Queeny was the plaintiff in its suit against these product defendants, the Queeny urged upon us the proposition that collateral estoppel was applicable because the product defendants were given the opportunity to litigate the issues as to defective astern machinery in the limitations trial but opted out of that trial. Now that Queeny has changed its uniform, and has assumed the outward appearance of the product defendants, it is arguing that collateral estoppel is not applicable since the product defendants were not a party in the limitation proceedings. We do not agree with the argument of the product defendants that to deny them their day in court is a violation of due process. On November 14, 1980, we rendered our Memorandum Opinion and Order based on the facts before the court. Today, however, the facts are quite different. Queeny was a party in the limitations trial where we made our findings as to the defective astern machinery. In the case *sub judice* we find that Queeny is the real party in interest, and hold that the testimony and findings of the limitations trial as to the astern machinery are binding upon the defendants herein. Offensive collateral estoppel connotes a situation in which a plaintiff seeks to estop a defendant from relitigating the issues which the defendant previously litigated and lost against a different plaintiff. *Parklane Hosiery Company, Inc. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979). Here we have a new plaintiff seeking estoppel against a defendant who had previously litigated and lost to a different plaintiff. Although the named defendants are the product defendants, Queeny is the real defendant. The court will not, however, preclude the defendants from presenting rebuttal testimony to the findings of the court in the limitations trial as to the defective astern machinery.

ORDER

The motion of the plaintiffs to declare the Queeny Interests the real party in interest, and collaterally estopping parties in this suit from relitigating issues conclusively decided is GRANTED, except that the defendants may present testimony in rebuttal to the findings of this court in the limitations trial as to the defective astern machinery.

IT IS SO ORDERED.