Kai Dwayne INGRAM, Appellant

v.

David LUPAS, Luzerne County Chief District Attorney; Daniel Beky, Luzerne County Detective; Stephen Kofchak, Larksville Assistant Chief of Police.

No. 09–1688.

United States Court of Appeals, Third Circuit.

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or Summary Action

Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6 Oct. 16, 2009.

Opinion filed: Nov. 24, 2009.

Kai Dwayne Ingram, Waynesburg, PA, pro se.

Sean P. McDonough, Esq., Dougherty, Leventhal & Price, Moosic, PA, Christopher P. Gerber, Esq., Siana, Bellwoar & McAndrew, Chester Springs, PA, for Defendants.

Before: BARRY, FISHER and COWEN, Circuit Judges.

## OPINION

PER CURIAM.

Kai Dwayne Ingram, a Pennsylvania state prisoner proceeding pro se, appeals from the District Court's order entering summary judgment in favor of the defendants. For the following reasons, we will affirm the District Court's order.

### I.

In May 2006, several witnesses saw a man known as "Kai" fire shots from a tan-colored van at two men on the street. The witnesses described Kai as a black male about five feet and ten inches tall who weighed approximately one hundred and eighty pounds, and who was wearing a white t-shirt and baggy pants. Several witnesses recognized the van as belonging to Kai's girlfriend, Faith Lane.

After interviewing the witnesses at the scene of the shooting, Luzerne County Detective Daniel Beky and Larksville Borough Assistant Chief of Police Stephen Kofchak spoke to Ms. Lane, who told them that Kai Ingram had taken her van to his mother's house. As a result, the officers went to look for Ingram there. Upon arrival, they spoke to Ingram's mother on her front porch, and she agreed to let them enter the house. As the officers entered, Ingram descended the stairs wearing clothes that matched the witnesses' descriptions. Detective Beky told Ingram that his name had been mentioned in connection with a crime, and asked him to accompany them to the police station for questioning. Ingram agreed. Once at the station, however, Ingram asked for a lawyer and declined to answer any questions. The officers consulted Luzerne County Chief District Attorney David Lupas, who determined that the evidence established probable cause to support an arrest. Ingram was subsequently arrested and charged with the shooting.

Before trial, Ingram filed a motion to suppress certain evidence on the ground that it had been obtained in violation of his rights under the Fourth and Fifth Amendments, but the court denied relief. A jury subsequently found him guilty of two counts of aggravated assault and one count of carrying a firearm without a license. The judgment was affirmed on appeal. Ingram is presently serving a sentence of twelve-and-a-half to twenty-five years in state prison.

In December 2007, Ingram filed the present pro se civil rights complaint in the United States District Court for the Middle District of Pennsylvania against Detective Beky, Officer Kofchak, and District Attorney Lupas. In the complaint, Ingram claimed that his Fourth, Fifth, and Fourteenth Amendment rights had been violated in connection with his arrest and detention. Specifically, Ingram alleged that: (1) Detective Beky and Officer Kofc-

hak illegally entered his home; (2) he was arrested without probable cause; and (3) he was not brought before a District Justice until ten hours after his arrest. Ingram also asserted both federal and state claims of false arrest, false imprisonment, and malicious prosecution.

Shortly after Ingram filed his complaint, the defendants filed motions to dismiss. By memorandum and order entered February 3, 2009, 2009 WL 249788, the District Court converted the defendants' motions into motions for summary judgment,[1] and entered judgment in their favor. This appeal followed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review a District Court's entry of summary judgment de novo. *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 235 (3d Cir.1995). Summary judgment is proper only if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Carrasca v. Pomeroy*, 313 F.3d 828, 832–33 (3d Cir. 2002). After a careful review of the record, we conclude that the appeal presents "no substantial question" under Third Circuit L.A.R. 27.4 and I.O.P. 10.6 and will, therefore, summarily affirm the District Court's order.

### A.  *Fourth Amendment Claims*
#### 1.  Illegal Entry

In the complaint, Ingram first claimed that Detective Beky and Officer Kofchak violated his Fourth Amendment rights when they entered his mother's home without a warrant because his mother did not consent to their entry. As the District Court correctly concluded, however, this claim is barred by the doctrine of collateral estoppel because the state court already considered it at the suppression hearing.

The doctrine of collateral estoppel generally precludes a party from re-litigating issues or claims that have already been adjudicated. *See Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). It is well established that principles of collateral estoppel are fully applicable to civil rights actions brought under § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 497, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Furthermore, this Court has held that defendants in a § 1983 suit can raise the issue of collateral estoppel when the plaintiff attempts to re-litigate in federal court issues decided against him in state criminal proceedings. *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir.1986); *see also Matthews v. Macanas*, 990 F.2d 467, 468 (9th Cir.1993), abrogated on other grounds as stated in *Pascual v. Matsumura*, 165 F.Supp.2d 1149, 1151 (D.Haw.2001) (noting that collateral estoppel may be asserted to preclude a defense to a *Bivens* claim); *Scherer v. Balkema*, 840 F.2d 437, 443 (7th Cir.1988) (same). Under Pennsylvania law, the doctrine of collateral estoppel requires that: (a) the issue in question be identical to an issue actually litigated in the prior litigation; (b) the prior litigation resulted in a final judgment on the merits; and (c) the party against whom the estoppel is asserted was a party or in privity with a party to the prior adjudication. *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 844 (3d Cir.1974).

■ Here, all of the elements of the collateral estoppel doctrine are satisfied:

---

1. Because the defendants attached portions of the criminal record to their pleadings, and because Ingram responded to their submissions, the District Court appropriately considered their motions to dismiss as motions for summary judgment. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997).

the issue that Ingram litigated at the suppression hearing is identical to the issue he raises here; the plaintiff in the instant action was the defendant in the criminal case; and the denial of a suppression motion followed by a conviction is a final judgment for collateral estoppel purposes, *see Shaffer v. Smith,* 543 Pa. 526, 530–31, 673 A.2d 872 (1996). Therefore, the District Court correctly concluded that Ingram was barred from re-litigating this issue.

### 2. Arrest Without Probable Cause

The District Court also correctly concluded that Ingram failed to show that Detective Beky and Officer Kofchak lacked probable cause to arrest him. "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Estate of Smith v. Marasco,* 318 F.3d 497, 514 (3d Cir.2003) (citing *Orsatti v. N.J. State Police,* 71 F.3d 480, 482 (3d Cir. 1995)). Although, in general, "the question of probable cause in a section 1983 damage suit is one for the jury," *Montgomery v. De Simone,* 159 F.3d 120, 124 (3d Cir.1998), a district court may conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding," and may enter summary judgment accordingly. *Sherwood v. Mulvihill,* 113 F.3d 396, 401 (3d Cir.1997).

■ Upon review of the record, we agree with the District Court that Detective Beky and Officer Kofchak had probable cause to arrest Ingram. As the District Court noted, several eyewitnesses provided the same physical description of Ingram, some even identifying him by name. The witnesses also reported that Ingram was driving a tan van. In addition, the officers were able to locate the owner of the van, who confirmed that Ingram had borrowed it to drive to his mother's house.

### 3. The Preliminary Hearing

■ Ingram next claimed that the defendants violated his Fourth Amendment rights by detaining him for ten hours before bringing him before a proper issuing authority. These allegations do not make out a constitutional violation. The Supreme Court has made clear that, after a warrantless arrest, a suspect may be detained before appearing before an issuing authority "for a brief period of detention to take the administrative steps incident to arrest." *Gerstein v. Pugh,* 420 U.S. 103, 113–14, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Absent proof that the probable cause determination was delayed unreasonably, a probable cause determination within forty-eight hours of arrest is sufficient to comply with the Fourth Amendment. *County of Riverside v. McLaughlin,* 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Here, Ingram was brought before a judicial officer for a probable cause determination within ten hours of his arrest—well within the forty-eight hour period. Furthermore, Ingram does not allege any improper conduct on the part of the officers in connection with the ten-hour period, nor does he argue that he was prejudiced as a result thereof. Therefore, the District Court correctly concluded that these allegations failed to establish a constitutional violation.

### 4. False Arrest and Imprisonment, Malicious Prosecution

■ Finally, the District Court correctly rejected Ingram's claims of false arrest and false imprisonment because, as discussed above, the officers had probable cause to arrest him. *See Dowling v. City of Phila.,* 855 F.2d 136, 141 (3d Cir.1988)

(stating that the proper inquiry in a § 1983 claim based on false arrest is whether the arresting officers had probable cause to believe the person arrested committed the offense). The District Court also correctly entered summary judgment against Ingram on his malicious prosecution claim, as success in the underlying criminal proceeding is a necessary element in such a claim.[2] *See Johnson v. Knorr,* 477 F.3d 75, 81 (3d Cir.2007).

### B. *Fifth Amendment Claim*

■ The District Court also correctly held that Ingram failed to establish a Fifth Amendment claim, as he did not provide any inculpatory statements to the police and therefore was not compelled to be a witness against himself. *See Giuffre v. Bissell,* 31 F.3d 1241, 1256 (3d Cir.1994).

### III.

Because there is no substantial question presented by this appeal, we will summarily affirm the District Court's order. *See* Third Cir. LAR 27.4; I.O.P. 10.6.

---

**2.** To the extent that Ingram's complaint raised state-law claims for false arrest, false imprisonment, and malicious prosecution, the District Court acted within its discretion when it declined to exercise jurisdiction over these claims. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).