Elizabeth BACICA, Roseanne Camesi, Gail Elliott, Robert Ferragine, Sandra Globa, Katrina Henry, June Johnson, Virginia Kelm, Kathleen Polito, Lucy Pontiff and Amber Tuzynski

v.

BOARD OF EDUCATION OF the SCHOOL DISTRICT OF the CITY OF ERIE, PENNSYLVANIA, Edmond T. Giovannelli, John C. Harkins, Mary M. Lamary, Leonard L. LoCastro, Jr., Donald A. Lundeen, Dr. A. E. Narducci, Dr. John N. Petrus, Edward J. Sparaga, Geraldine Zurn and Richard Hilinski.

Civ. A. No. 76–115 Erie.

United States District Court, W. D. Pennsylvania.

June 7, 1978.

George Levin, Erie, Pa., for plaintiffs.

John W. Beatty, Erie, Pa., for defendants.

## OPINION

WEBER, Chief Judge.

Plaintiffs in the above-entitled case are white teachers and employees of the City of Erie School District. Plaintiffs seek equitable and declaratory relief and compensatory and punitive damages under 42 U.S.C. §§ 1981 and 1983 because of their suspension or furlough by defendants in an order favoring minority employees and different from the order required by defendants' seniority list. The suspensions and furloughs were the result of a reduction in force of defendants professional employees because of declining enrollment.

Plaintiffs claim the action of the Board of Education of the School District of the City of Erie (Board) constitutes a discriminatory employment practice which denies plaintiffs their right to make and enforce contracts and deprives them of a property interest without due process of law.

In defense the Board contends plaintiffs have suffered no loss or impairment of any rights because of the furloughs. Defendants also claim their actions are the result of a good faith attempt to comply with an Order of the Commonwealth Court of Penn-

sylvania and therefore the Board's actions in furloughing the plaintiffs cannot be made the basis of any claim for damages.

Presently before the Court are the motions for summary judgment filed by each side and accompanied by supporting briefs. The parties have also filed extensive stipulations and other evidentiary materials with respect to the summary judgment determination. Evidence relevant to our determination of summary judgment was also introduced at an evidentiary hearing held on the motions. An evidentiary hearing was necessary because of the insufficiency of the evidentiary material submitted to identify the individuals affected by the board action and to determine the existence of damages to any individual plaintiff.

Despite the mass of evidentiary materials offered by both sides in support of and in opposition to the cross motions for summary judgment, we feel this matter is proper for determination at the summary judgment stage of the proceedings. After considerable effort by the court in an attempt to distill the facts in controversy to their essence, it appears no dispute exists with respect to the material facts underlying plaintiffs' claims. The only controversy involves questions of law which are subject to summary disposition.

Defendant School Board sets forth as the basis for its motion, and, inter alia, in defense of plaintiffs' motion, that it is following an order of the Commonwealth Court of Pennsylvania directing them to furlough or suspend plaintiffs in an order contrary to the existing seniority list and in favor of minority teachers with less seniority than plaintiffs. In their brief, defendants claim that "[s]ince there can be no question as to the propriety of a judicial order which directs reverse discrimination . . . , summary judgment must be granted in favor of the defendant."

For several reasons we do not feel the Commonwealth Court Order of May 3, 1972, as supplemented by the Order of April 29, 1975, controls defendants' actions with respect to the furloughs of plaintiffs.

The Commonwealth Court's Order was pursuant to and the result of an agreement between the parties to the Order. By the consent decree of May 3, the Court merely approved a stipulation entered into by the parties.[1]

We recognize the possible collateral estoppel effect of consent decrees in certain situations, *Rodriguez v. E. Tex. Motor Freight*, 505 F.2d 40 (5th Cir. 1974), *reh. denied* 518 F.2d 1407 (5th Cir. 1975), *cert. granted* 425 U.S. 990, 48 L.Ed.2d 814 (1976), *vacated on other grounds* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), *aff'd* 560 F.2d 1286 (5th Cir. 1977); *Seaboard Air Line RR Co. v. McCourt Trucking*, 277 F.2d 593 (5th Cir. 1960); See: Moore, Moore's Federal Practice ¶ 0.444[3] 2d ed. 1976; James, "Consent Judgments as Collateral Estoppel" 108 U.Pa.L.Rev. 173 (1959). We do not, however, feel the Commonwealth Court orders may be given collateral estoppel effect in this matter.

The language of the decree and the conduct of the parties in failing to raise the reduction in force situation in the stipulation demonstrates that the issue was never intended to be covered by the court orders. Prior judgments can only be introduced for collateral estoppel purposes if the issues sought to be precluded were *actually* raised and litigated in the prior action. *Donegal Steel Foundry Co. v. Accurate Products Co.*, 516 F.2d 583 (3d Cir. 1975); *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840 (3d Cir. 1974).

The Commonwealth Court orders address the question of affirmative action on behalf of the School District in planning a completely integrated school system

---

1. The Order of April 29, 1975, explained the origin of the May 3, 1972, Order. "We cannot overemphasize the fact that compliance with the May 3, 1972 consent decree is and has been the issue presented to the Court, and the fact that *the consent decree was not the making of* *the Court but rather was the making of the parties who presented it to this Court* as their solution to the problem." *Memorandum Opinion and Order*, No. 723 C.D. 1971, Commonwealth Court of Pennsylvania (Kramer, J.) (emphasis added).

through compliance with certain minority enrollment and staff percentages. The orders do not consider or deal with the question of the proper method of furloughing or suspending professional employees when decreases in staffing requirements occur. With respect to the professional staff, the orders deal exclusively with *hiring* practices of the School District. Therefore, the defendants cannot use the court orders to validate any discriminatory employment practices with respect to suspensions, furloughs or dismissals of professional employees.

■ Another bar to the collateral estoppel use of the Commonwealth Court Orders is the lack of privity of interest between plaintiffs and the parties to the consent decree. *Scooper Dooper,* supra. The third party interests of plaintiffs were not represented prior to the issuance of the Commonwealth Court orders. Even though plaintiffs are employees of the Erie School District, a party to Commonwealth Court action, we do not consider the relationship so close as to constitute an identification of interest with resultant succession to the same legal rights and obligations the District realized by the court orders. See *Bruszewski v. United States,* 181 F.2d 419 (3d Cir. 1950).

We conclude defendants' actions are neither mandated nor protected by the Commonwealth Court orders. Therefore, we shall deny defendants' Motion for Summary Judgment.

Plaintiffs also move for summary judgment claiming defendants practiced an unlawful discriminatory employment practice by furloughing plaintiffs in a manner contrary to the existing seniority list. In re-

ducing its force the Board omitted certain minority group members of less seniority than other white employees who were furloughed.

■ In the framework of the Civil Rights Act of 1964, Title VII, Section 701 et seq., 42 U.S.C. § 2000e et seq., bona fide seniority systems—systems facially neutral and neither intended nor designed to disguise discrimination or continue the effects of past discrimination—are free from attack as being unlawful discrimination. *Franks v. Bowman Transportation,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). The fact that plaintiffs' theory of recovery is premised on §§ 1981 and 1983 rather than Title VII, does not make furloughing according to the existing seniority list any more susceptible to attack. *Chance v. Bd. of Examiners*[2] 534 F.2d 993 (2d Cir. 1976); *Dickerson v. U. S. Steel Corp.,* 439 F.Supp. 55 (E.D.Pa.1977).

Neither the Commonwealth Court orders nor the Findings of Fact, Conclusions of Law and Final Order of the Pennsylvania Human Relations Commission (referred to in the court orders) make reference to a finding of past discrimination with respect to the Board's hiring of professional employees. The proceedings which led to the Commonwealth Court orders were limited to correcting a "racial imbalance" in the Erie school system. A "racially imbalanced" school, as defined by the Pennsylvania Human Relations Commission is "one whose concentration of Negro or white *pupils* is disproportionate to the enrollment of that particular racial group in all of the schools of the school district in the same grade span." (emphasis added). Finding of Fact, Docket No. P–703, Pa. H.R.C. at 4.

**2.** *Chance* involved an appeal from a district court directing the Board of Education of the City of New York to "excess" supervisory personnel in accordance with a formula imposing racial quotas upon the excessing process. Excessing rules provide, in brief, that when a position in a school district is eliminated, the least senior person in the job classification used to fill the position shall be transferred, demoted or terminated. Use of a seniority sys-

tem was mandated by state law and the supervisory personnel's collective bargaining agreement. In citing *Jersey Central Power & Light Co. v. Local Unions 327, I.B.E.W.,* 508 F.2d 687 (3d Cir. 1975)—a Title VII action—*Chance* found that the non-remedial distortion of a seniority system through preferential treatment based solely on race is a form of reverse discrimination specifically proscribed by Congress.

■ Therefore, it has not been shown that the seniority system utilized by the School District departs from the bona fide systems protected by *Franks v. Bowman*, supra, and its progeny. The action of the Board cannot be characterized as an attempt to correct conditions resulting from past discrimination in recruitment of professional staff. In furloughing, defendants must abide by the order of furlough found in the existing seniority list despite any good faith attempts to attain a racial balance in its professional employee workforce.

Because we feel that defendants improperly furloughed plaintiffs we shall grant plaintiffs' motion for summary judgment. However, in their answer, defendants claim that plaintiffs have suffered no damage because of the furloughs.

There are eleven plaintiffs to the present action. All plaintiffs, however, do not stand in the same position with respect to a right of recovery: not all have been damaged.

The School District furloughed at least eleven members of its professional staff in June, 1976. All of plaintiffs are included in this eleven. At that time the seniority roster which included these eleven read as follows:

| | Date of Initial Hiring | Date of Regular Professional Contract |
|---|---|---|
| Kelm | 10/8/73 | 10/9/75 |
| Henry | 10/8/73 | 10/9/75 |
| Camesi | 10/29/73 | 10/3/75 |
| Elliott | 2/5/74 | 2/6/76 |
| Bacica | 2/18/74 | 2/19/76 |
| Tuzynski | 3/12/74 | 3/15/76 |
| MANUS * | 3/22/74 | 3/24/76 |
| Ferragine | 4/1/74 | 8/26/76 |
| DOBBS * | 8/28/74 | 8/26/76 |
| KELLY * | 8/28/74 | 8/ /76 |
| Globa | 8/28/74 | 8/28/76 |
| Polito | 8/28/74 | 8/28/76 |
| HARPER * | 8/28/74 | 1/24/77 |
| Johnson | 8/28/74 | 1/24/77 |
| Pontiff | 9/30/74 | 1/24/77 |
| MYERS * | 2/3/75 | 2/4/77 |

* Minority professional employees.

We assume that at least these eleven furloughs would have taken place regardless of whether the Board furloughed according to the existing seniority list or in an order different from the existing seniority list. Therefore, the only plaintiffs possibly damaged are those who would not have been furloughed in June 1976 but for the Board's action in omitting the names of the minority teachers from those furloughed. But there are only 5 minority members among this list. Therefore only the top 5 of the list would not have been furloughed had the minority members been included in the 1976 furlough list.

Plaintiff June Johnson was not immediately re-hired after the summer 1976 furloughs. Prior to receipt of her Regular Professional Contract, Johnson lost five months of salaried employment because she was not called back to work until January 24, 1977. Johnson was given a Regular Professional Contract on January 24, 1977.

Plaintiff Sandra Globa received her Regular Professional Contract on August 28, 1976. According to the Stipulation on employment and background status, Globa also lost two days of salaried employment prior to receipt of her Contract.

One of the minority professional employees with less seniority than Johnson remained in the employ of the School District during the summer 1976 furloughs. This minority staff member remained employed throughout the 1976–1977 school year.

Globa and Johnson were temporary professional employees, See: 24 P.S. § 11–1108, and not regular professional employees prior to the June–August 1976 furloughs. No tenure rights vested in these plaintiffs prior to receipt of their Regular Professional Contracts: their positions were secured by temporary contracts only. 24 P.S. § 11–1108(d).

■ The Board could, within its lawful discretion, refuse to recall these plaintiffs at the end of summer 1976 furloughs. However, here it is admitted that the

Board's reason for not recalling Globa and Johnson was racially motivated, i.e. preferring minority professional employees over white professionals in order to attain a racial balance in its professional staff. The decision not to recall Globa and Johnson constituted purposeful racial discrimination, therefore these two plaintiffs are entitled to relief under §§ 1981 and 1983. See: *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Williams v. Anderson,* 562 F.2d 1081 (8th Cir. 1977).

Between June 21, 1977 and August 28, 1977 (subsequent to the filing of this action) defendants ordered a second furlough of two members of its professional staff: June Johnson and Lucy Pontiff. Johnson and Pontiff were given Regular Professional Contracts before the second furlough. These plaintiffs were furloughed even though one minority professional employee had less seniority.

Because one minority teacher was lower in seniority than Johnson—even if strict seniority were followed—Pontiff would have been furloughed in any event. Therefore, Pontiff has suffered no damage because of the 1977 furloughs. Johnson has possibly suffered damage.

As a result of the furloughs plaintiffs sustained no loss in accrued seniority rights. At the evidentiary hearing on the motions for summary judgment, Nathaniel Turner, Personnel Director for the Erie School District, testified that no loss in seniority was incurred by any of the plaintiffs because of the furloughs. This is because those plaintiffs possibly damaged by the furloughs all were eventually rehired to fill vacancies occurring because of normal attrition, leaves or other personnel changes. The Turner testimony has not been contradicted and we find it a correct statement of the furloughs' effect on plaintiffs' accrued seniority.

■ At the evidentiary hearing, Turner also testified that although no accrued seniority rights were lost by plaintiffs as a result of furloughs, fringe benefits during the period of suspension were cut off. If plaintiffs working under their Regular Professional Contracts were actually denied benefits during this period, the amount of their claims are recoverable from defendants. Denial of vested benefits is actionable under 42 U.S.C. § 1981 and § 1983.

■ According to the Stipulation on employment and background status it is apparent that only one plaintiff was denied fringe benefit coverage during the furlough period. Virginia Kelm submitted a claim for $30 for dental work performed during the furlough period and is entitled to reimbursement for the amount of the expenditure which was not covered by the insurance program.

■ The original pleadings in this action raised due process questions with respect to the means by which the Board put the above furloughs into effect. Plaintiffs' original Complaint contained a prayer for relief, specifically referring to defendants' failure to grant a hearing prior to plaintiffs' furloughs. Although plaintiffs' Amended Complaint alleges that the Board furloughed without a prior hearing of any type, it does not base plaintiffs' claims on the Board's failure to grant a hearing. The prayer for relief in the Amended Complaint omits any reference to defendants' failure to grant hearings prior to furlough. Prior to filing of the Amended Complaint plaintiffs filed a waiver of their request for an injunctive order requiring the Board to hold a hearing independent of the hearing before this Court. In any event, the Court finds no due process problems with respect to the means by which the Board implemented the two furlough periods.

■ We shall deny plaintiffs' request for punitive damages. Punitive damages are awarded to punish outrageous conduct and may be awarded when the act is done with reckless indifference as well as bad motive. *Focht v. Rabada,* 217 Pa.Super. 35,

268 A.2d 157 (1970). It is clear to us that defendant School Board, although implementing a system of proscribed preferential treatment, was attempting to act in good faith compliance with a judicial order.

Plaintiffs also seek equitable relief. With respect to the request for an injunction re-instating plaintiff June Johnson, the question is now moot. According to the Stipulation, Johnson returned from a second furlough in June–August 1977, on August 28, 1977. She is currently employed as a full time regular professional employee for the Erie School District.

In any action or proceeding to enforce provisions of § 1981 or § 1983, 42 U.S.C. § 1988 permits this Court, in its discretion, to allow the prevailing party an award of reasonable attorney fees as part of the costs of litigation. Although the actual damages sustained here may be slight, plaintiffs are clearly the prevailing party.

The Court was severely handicapped in this case by the failure of the plaintiffs' counsel to marshal the evidence and make a clear presentation of controlling facts, despite several requests from the Court. The questions of law involved were not complex, and the extensive briefs and photostats of other decisions were of little value in determining the factual issues which we faced here. The identification and determination of the proper parties plaintiff and the parties actually damaged was never clearly presented to the Court by the plaintiffs. This failure extended to defendants' counsel, who should have been able to make a clearer presentation of controlling facts with the personnel records and facilities of the defendant School Board available to him. Neither party was able to present evidence sufficient for the Court to make its determination without considerable effort and prodding. It was necessary for the Court to hold its own evidentiary hearing in order to determine the existence of facts in controversy with respect to the summary judgment motions. This deficiency in presentation of the evidence placed a burden on the Court which delayed the resolution of the matter.

Because the award of counsel fees is a discretionary matter and because we do not feel that the relevant facts necessary for our determination were properly marshaled or presented in an orderly and timely fashion we shall deny the award of attorney's fees to the plaintiffs.

Because no evidence has been presented by which the Court can fix the damages of those plaintiffs found to be entitled to damages, the Court shall enter an Order fixing liability and providing for the assessment of damages.