604 A.2d 1053

**Ronald M. McCLELLAN and Harold Shotel, Co–Executors of the Estate of Marilyn M. McClellan, Deceased, Appellants,**

**v.**

**HEALTH MAINTENANCE ORGANIZATION OF PENNSYLVANIA a/k/a HMO PA Foundation and United States Healthcare of Pennsylvania, Inc. d/b/a HMO Pennsylvania, Appellees.**

**Ronald M. McCLELLAN and Harold Shotel, Co–Executors of the Estate of Marilyn M. McClellan, Deceased, Appellants,**

**v.**

**Joseph A. HEMPSEY, D.O.**

Superior Court of Pennsylvania.

Argued September 26, 1991.

Filed March 10, 1992.

Brian D. Rosenthal, Philadelphia, for appellants.

David F. Simon, Blue Bell, for Health Maintenance & U.S. Healthcare, appellees.

Before ROWLEY, President Judge, and McEWEN and TAMILIA, JJ.

McEWEN, Judge:

This appeal has been taken from an order which sustained the preliminary objections in the nature of a demurrer filed by Health Maintenance Organization of Pennsylvania and United States Healthcare of Pennsylvania (hereinafter appellees) and dismissed the complaint against appellees with prejudice.[1]

Marilyn McClellan, appellants' decedent, a 39-year-old teacher employed by the School District of Philadelphia, was the wife of appellant Ronald M. McClellan and the mother of three young children. Sometime prior to June of 1985 Marilyn McClellan contracted, through her employer, the School District of Philadelphia, with Health Maintenance Organization of Pennsylvania, an HMO operated by appellees, for health care coverage for herself and her family.

HMOs, authorized by the Health Maintenance Organization Act, Act of December 29, 1972, P.L. 1701, No. 364, § 1,

---

1. The order did not affect the action against the remaining defendant, Joseph A. Hempsey, D.O.

*as amended,* 40 P.S. §§ 1551 *et seq.,* are defined as "an organized system which combines the delivery and financing of health care and which provides basic health services to voluntarily enrolled subscribers for a fixed prepaid fee." 40 P.S. § 1553. Appellees allege in their brief that HMO PA is a modified IPA model HMO[2] "in which the HMO contracts with the independent, private physicians as independent contractors." A primary care physician is assigned to each subscriber and is the "physician who supervises, coordinates, and provides initial and basic care to members; initiates their referral for specialist care; and maintains continuity of patient care." 28 Pa.Code § 9.2.

Marilyn McClellan selected Joseph A. Hempsey, D.O., as her family's primary care physician from the list of participating physicians provided by HMO of Pennsylvania. Appellants allege that Dr. Hempsey removed a mole from Mrs. McClellan's back on October 28, 1985, and, even though Mrs. McClellan had related to Dr. Hempsey that the mole had recently undergone a marked change in size and color, Dr. Hempsey discarded the mole without obtaining a biopsy or other histological exam. Appellants claim that as a result of Dr. Hempsey's failure to submit the tissue sample for testing, Mrs. McClellan's malignant melanoma was not timely diagnosed or treated, and Mrs. McClellan died on January 1, 1988.

Appellants commenced a medical malpractice action against Dr. Hempsey, and later instituted suit against appellees, alleging that the negligence of appellees in selecting and retaining Dr. Hempsey as a primary care physician contributed to the condition which caused the death of Mrs. McClellan. Appellants also sought to hold appellees liable for breach of contract and misrepresentation based upon the express representations made by appellees concerning the competency of their primary care physicians and the

2. An individual practice association (IPA) HMO is defined as "an HMO that contracts for delivery of services with a partnership, corporation, or association whose major objective is to enter into contractual arrangements with health professionals for the delivery of such health services." 28 Pa.Code § 9.2.

availability to subscribers of consultation and treatment by medical specialists whenever warranted through primary care physician referrals. The two actions were consolidated and appellees filed preliminary objections in the nature of a demurrer to the complaint. The trial court sustained the demurrer[3] and this appeal timely followed.[4]

Appellants contend that the order must be reversed and the complaint reinstated since the amended complaint, contrary to the conclusion of the trial court, sets forth valid causes of action in assumpsit and trespass based upon:

1) ostensible agency;

2) corporate negligence;

3) breach of contract/breach of warranty; and

4) intentional misrepresentation or fraud.

Appellants also argue that the complaint properly includes a claim for punitive damages and that none of the claims set forth in the amended complaint are preempted by ERISA.[5]

3. We are without the benefit of an opinion by the learned trial court judge as a result of his sudden and prolonged illness.

4. The issues raised on appeal, as set forth in appellants' brief, are:

a) whether plaintiffs stated a cause of action for negligence against the HMO Defendants when they have specifically alleged all of the elements necessary to support an action for corporate negligence liability and, also, for respondeat superior liability under a theory of ostensible agency.

b) whether plaintiffs stated a cause of action against the HMO Defendants where they have alleged all of the elements necessary to support an action for breach of contract/breach of warranty, where the HMO Defendants breached the terms of their various contractual agreements....

c) whether plaintiffs stated a cause of action against the HMO Defendants, for intentional misrepresentation and/or fraud, where it is specifically pled that they solicited members and disseminated advertising and other information to the public containing misrepresentations about the quality of care provided, the screening and review processes for member physicians and the freedom of access to specialist care, when the HMO Defendants knew this information was misleading and untrue, and when they further knew the public, and plaintiffs' decedent in particular, would rely upon this information to their detriment.

d) whether plaintiffs stated a cause of action against the HMO Defendants for punitive damages....

5. Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*

After a careful review of the record, we find that the procedural posture of this case compels reversal of the trial court order and reinstatement of the complaint.[6]

A trial court, in ruling upon preliminary objections in the nature of a demurrer, employs the same standard applied by this Court:

A demurrer can only be sustained where the complaint is clearly insufficient to establish the pleader's right to relief. *Firing v. Kephart*, 466 Pa. 560, 353 A.2d 833 (1976). For the purpose of testing the legal sufficiency of the challenged pleading a preliminary objection in the nature of a demurrer admits as true all well-pleaded material, relevant facts, *Savitz v. Weinstein*, 395 Pa. 173, 149 A.2d 110 (1959), and every inference fairly deducible from those facts, *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 267 A.2d 867 (1970); *Troop v. Franklin Savings & Trust*, 291 Pa. 18, 139 A. 492 (1927). The pleader's conclusions or averments of law are not considered to be admitted as true by a demurrer. *Savitz v. Weinstein, supra.*

Since the sustaining of a demurrer results in a denial of the pleader's claim or a dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without doubt fail to state a claim for which relief may be granted. *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 259 A.2d 443 (1969); *Botwinick v. Credit Exchange, Inc.*, 419 Pa.

6. Appellants include in their complaint an allegation that the agreements between appellees and their "primary care physicians" are themselves tortious since it is "against the 'primary care physician's' personal or pecuniary interest to give proper medical advice and make appropriate referral." This allegation suggests as issues whether the essential elements of the HMO system violate public policy, and whether the HMO system itself contributed to the asserted malpractice in this case. It is settled beyond peradventure, however, that the judicial branch is precluded by constitutional mandate from addressing the ethical, moral, or social implications of a health care program which indirectly provides a diminished compensation for a provider who deems further medical attention necessary or desirable. The fundamental prerogative and duty of considering and establishing social policy, including, of course, the regulation of health care providers, is vested solely in the legislature.

65, 213 A.2d 349 (1965); *Savitz v. Weinstein, supra; London v. Kingsley,* 368 Pa. 109, 81 A.2d 870 (1951); *Waldman v. Shoemaker,* 367 Pa. 587, 80 A.2d 776 (1951). If the facts as pleaded state a claim for which relief may be granted *under any theory of law* then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected. *Packler v. State Employment Retirement Board,* 470 Pa. 368, 371, 368 A.2d 673, 675 (1977); *see also Schott v. Westinghouse Electric Corp., supra* [436 Pa.] at 291, 259 A.2d at 449. *MacGregor v. Mediq, Inc.,* 395 Pa.Super. 221, 225–26, 576 A.2d 1123, 1125 (1990), *quoting County of Allegheny v. Commonwealth,* 507 Pa. 360, 372, 490 A.2d 402, 408 (1985) (emphasis supplied). *Accord: Kyle v. McNamara & Criste,* 506 Pa. 631, 634, 487 A.2d 814, 816 (1985); *Mudd v. Hoffman Homes for Youth, Inc.,* 374 Pa.Super. 522, 524–525, 543 A.2d 1092, 1093–1094 (1988). Thus, even though less than a model pleading, the complaint in the instant case may not be dismissed unless this Court is convinced that, as a matter of law, no recovery is possible under the facts as pled.

## I. CLAIMS BASED UPON NEGLIGENCE.

Appellants sought, in their complaint, to state a cause of action in negligence utilizing theories of ostensible agency and corporate negligence.

### (a) *Ostensible Agency.*

█ As to the theory of ostensible agency, resolution of the question of whether the defendant, Joseph Hempsey, D.O., could properly be found by a jury to be the ostensible agent of the appellees is controlled by the holding of this Court in *Boyd v. Albert Einstein Medical Center,* 377 Pa.Super. 609, 547 A.2d 1229 (1988). This Court there concluded that the trial court had erred in entering summary judgment in favor of the defendant HMO [7] where

---

7. The HMO defendant in *Boyd* was Health Maintenance Organization of Pennsylvania, one of the appellees in the instant case.

there "existed a question of material fact as to whether participating physicians are the ostensible agents of HMO." *Id.*, 377 Pa.Superior Ct. at 610–11, 547 A.2d at 1229. We agree with appellants that the factual allegations of their complaint are sufficient to withstand a demurrer since the defendant Dr. Hempsey could properly be found by a jury, depending upon the evidence produced at trial, to be the ostensible agent of appellees.

The theory of ostensible agency, first applied by this Court in *Capan v. Divine Providence Hospital,* 287 Pa.Super. 364, 430 A.2d 647 (1980), as noted by our Supreme Court in *Thompson v. Nason Hospital,* 527 Pa. 330, 338, 591 A.2d 703, 707 (1991), has been defined as follows:

Pennsylvania courts have determined that the two factors relevant to a finding of ostensible agency are: (1) whether the patient looks to the institution, rather than the individual physician for care and (2) whether the HMO 'holds out' the physician as its employee. Also instructive is the definition of apparent or ostensible agency in the Restatement (Second) of Agency, Section 267, which provides:

One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

*Boyd v. Albert Einstein Medical Center, supra,* 377 Pa.Super. at 619–20, 547 A.2d at 1234.

The amended complaint filed by appellants provided, in relevant part:

a) that at all relevant times, the appellees were acting by and through their agents, servants, employees and/or ostensible agents who, in turn were acting within the course and scope of their employment. [Paragraph 5]

b) that the appellees assigned and/or referred each individual subscriber to the care of a "primary care physician". [Paragraph 6]

c) that appellants' decedent was provided with a directory of primary care physicians from which she was required to choose a "primary care physician". [Paragraph 43]
d) that appellants' decedent was assigned and/or referred to Dr. Joseph Hempsey as her "primary care physician". [Paragraph 14]
e) that no member of the HMO operated by appellees could consult with or come under the care of a specialist who participated in the HMO unless the "primary care physician" referred the individual subscriber to the participating specialist. [Paragraph 9]
f) that the appellees represented that "each and every primary care physician provided by [appellees] satisfied criteria for participation as a qualified physician after passing vigorous screening criteria ..." and that "their primary care physicians had to undergo vigorous screening and meet certain criteria to be qualified as a primary care physician for [appellees and] that ... [Dr.] Hempsey, D.O. did undergo their screening, met their criteria...." [Paragraphs 34 and 41];
g) that the appellees had a duty to exercise reasonable care in providing "primary care physicians" who were qualified to provide competent care to subscribers [Paragraph 20]; and
h) that as a result of the justifiable reliance of appellants' decedent on the expertise of the appellees to evaluate, screen, and select their primary care physicians, appellants' decedent selected Dr. Hempsey who was not qualified to render medical care and who should not have been assigned to appellants' decedent as a primary care physician.

Appellees argue that, even in light of the decision of this Court in *Boyd*, the complaint was properly dismissed since appellants failed to "allege any holding out by appellees or any reliance by Marilyn McClellan on representations made by appellees. Most importantly, the amended complaint does not allege any causal link between the 'holding out' and Marilyn McClellan's injuries." [Brief at 4–5]. We find

that a fair reading of the allegations contained in the amended complaint, and consideration of "every inference fairly deducible from those facts ...", *MacGregor v. Mediq, Inc., supra,* 395 Pa.Super. at 225–26, 576 A.2d at 1125, reveals that there are sufficient averments of fact to withstand a demurrer.[8]

Moreover, as conceded by appellees:

An averment of agency is a fact that is admitted for purposes of a demurrer rather than a conclusion of law.

*DeGenova v. Ansel,* 382 Pa.Super. 213, 218, 555 A.2d 147, 150 (1988) *quoting Line Lexington Lumber and Mill Work Co., Inc. v. Pennsylvania Publishing Co.,* 451 Pa. 154, 162, 301 A.2d 684, 689 (1973). *Accord: Department of Transportation v. Bethlehem Steel Corp.,* 28 Pa.Cmwlth. 214, 218, 368 A.2d 888, 892 (1977). *See also: Frazier v. Ruskin,* 203 Pa.Super. 525, 533, 199 A.2d 513, 518 (1964).

The allegations of the complaint—when all reasonable inferences therefrom are taken as true as they must when we consider the propriety of the demurrer—are sufficient to state a cause of action for negligence based upon the theory of ostensible agency. Appellants have alleged that Dr. Hempsey was held out as the agent of the appellees, and that appellees represented that their primary care physicians were carefully screened and fully qualified physicians who would render competent medical care to HMO members and who would obtain timely consultation and/or treatment for HMO members with medical specialists whenever such treatment was warranted. The complaint further alleges that Dr. Hempsey was not properly screened or evaluated and was not qualified to act as a primary care physician and, as a result of that incompetency, Dr. Hemp-

8. Appellants alleged in their complaint that the decedent subscribed to HMO PA's health plan in reliance on the "material misrepresentation ... that each and every primary care physician provided by defendants HMO satisfied criteria for participation as a qualified physician after passing vigorous screening criteria established by Defendants HMO" and relied on "misrepresentations ... that the primary care physicians with whom they enrolled under the terms of the contract with Defendants HMO would promptly and properly refer patients to appropriate specialists as required for necessary medical treatment."

sey failed to perform certain tests and failed to timely refer the appellants' decedent to a specialist, as a direct result of which she died. Thus we are compelled to conclude that the grant of a demurrer was, under these circumstances, error.

(b) *Corporate Negligence.*

Appellants' argument that their complaint also sets forth sufficient facts to state a valid cause of action in negligence based upon a theory of corporate negligence, as defined by our Supreme Court in *Thompson v. Nason Hospital, supra,* is not as easily resolved. The Court there reasoned:

the corporate hospital of today has assumed the role of a comprehensive health center, with responsibility for arranging and coordinating the total health care of its patients.... Courts have recognized several bases on which hospitals may be subject to liability including respondeat superior, ostensible agency and corporate negligence....

Corporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital. This theory of liability creates a nondelegable duty which the hospital owes directly to a patient....

The hospital's duties have been classified into four general areas: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.

*Thompson, supra,* 527 Pa. at 338-40, 591 A.2d at 706-707 (citations omitted).

While HMO PA could be viewed as having "assumed the role of a comprehensive health center", only two of the four duties defined by the Court in *Thompson* could be imposed upon a modified IPA model HMO since such an HMO has

no facilities or equipment and thus cannot "oversee ....
patient care [within its walls]." It is reasonable, however,
to require that an IPA model HMO "select and retain only
competent physicians" and "formulate, adopt and enforce
adequate rules and policies to ensure quality care for [its
subscribers]." *Id.,* 527 Pa. at 339–40, 591 A.2d at 707.

■ It would appear unnecessary, however, to extend the
theory of corporate negligence to IPA model HMOs in order
to find that such HMOs have a non-delegable duty to select
and retain only competent primary care physicians. "[T]his
court has adopted the view of [Section 323 of] the Restate-
ment (Second) of Torts for purposes of liability regarding
services rendered." *Mohler v. Jeke,* 407 Pa.Super. 478,
486–87, 595 A.2d 1247, 1251 (1991), *citing Cantwell v.
Allegheny County,* 319 Pa.Super. 255, 466 A.2d 145 (1983).
*See also: Patentas v. United States,* 687 F.2d 707, 714–715
(3rd Cir.1982). Section 323 of the Restatement (Second) of
Torts provides:

> One who undertakes, gratuitously or for consideration, to
> render services to another which he should recognize as
> necessary for the protection of the other's person or
> things, is subject to liability to the other for physical
> harm resulting from his failure to exercise reasonable
> care to perform his undertaking, if
>
> (a) his failure to exercise such care increased the risk
> of harm, or
>
> (b) the harm is suffered because of the other's reliance
> upon the undertaking.

It thus follows that a complaint, if it is to state a cause of
action under Section 323 against an IPA model HMO, must
contain factual allegations sufficient to establish the legal
requirement that the HMO has undertaken

(1) To render services to the plaintiff subscriber,

(2) which the HMO should recognize as necessary for the
protection of its subscriber,

(3) that the HMO failed to exercise reasonable care in selecting, retaining, and/or evaluating the plaintiff's primary care physician, and

(4) that as a result of the HMO's failure to use such reasonable care, the risk of harm to the subscriber was increased.

 Appellants' complaint, when read in light of the appropriate standard, alleged that appellees had a duty to use reasonable care in selecting and retaining primary care physicians, that appellees breached that duty of care, and that, as a result of that breach, appellants' decedent was not timely diagnosed or treated, resulting in her death. The required allegations in a negligence action are "that a given standard of care was called for and that such standard was breached or that defendant acted less reasonably than a reasonable person would act. The complaint must also allege that such negligence resulted in an injury." *Doe v. Dyer–Goode*, 389 Pa.Super. 151, 158, 566 A.2d 889, 892 (1989). We find that the allegations of the complaint are sufficient to state a cause of action for negligence in the selection, retention, and/or evaluation of the primary care physician. Since Section 323 of the Restatement (Second) of Torts has long been part of the law of this Commonwealth,[9] we need not now consider or decide whether the theory of corporate negligence is applicable to IPA model HMOs.

Under the Rules of Civil Procedure, a plaintiff is not obligated to state the legal theory or theories underlying his complaint. Pa.R.C.P. 1019(a) requires only allegations of the "material facts on which a cause of action ... is based." Assertions of legal rights and obligations in a complaint may be construed as conclusions of law, which have no place in a pleading and need not be denied in preliminary objections. Goodrich–Amram 2d, *Standard Pennsylvania Practice* § 1019(a):12 (collecting cases). This system of fact pleading may sometimes cause both the court and the defendant uncertainty as to the legal

---

**9.** *See Thompson v. Nason Hospital, supra,* 527 Pa. at 340, 591 A.2d at 708; *Mitzelfelt v. Kamrin,* 526 Pa. 54, 584 A.2d 888 (1990).

grounds of the complaint. Here, for example, the trial court discerned only one possible cause of action, that of fraud and deceit. The complaint, however, stated at least one other cause of action. The obligation to discover the cause or causes of actions is on the court: the plaintiff need not identify them. *See Schreiber v. Republic Intermodal Corp.*, 473 Pa. 614, 375 A.2d 1285 (1977). Therefore, appellant has preserved his claim that the complaint states a cause of action other than fraud and deceit, even though he did not identify any such cause in his complaint.

*DelConte v. Stefonick*, 268 Pa.Super. 572, 577–78, 408 A.2d 1151, 1153 (1979) (footnote omitted).

## II. MISREPRESENTATION.

Nor can we perceive any basis upon which to sustain the demurrer to appellants' claims for misrepresentation and punitive damages.

Appellees, in their preliminary objections, contended that the amended complaint failed to state a cause of action for intentional misrepresentation or tortious fraud in that appellants did not allege:

(1) a misrepresentation of past or existing facts;

(2) utterances that were fraudulent;

(3) an intent to induce detrimental reliance; or

(4) damages proximately caused by the fraudulent conduct.

The elements of a cause of action for fraud or misrepresentation are:

(1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damages to the recipient as the proximate result. *Neuman v. Corn Exchange National Bank & Trust*, 356 Pa. 442, 51 A.2d 759 (1947). The deliberate nondisclosure of a material fact is the same as culpable misrepresentation. *Id.* Even innocent

misrepresentations are actionable if they relate to matters material to the transaction involved; while, if the misrepresentation is made knowingly or involves non-privileged failure to disclose, materiality is not a requisite to the action, *DeJoseph v. Zambelli,* 392 Pa. 24, 139 A.2d 644 (1958), *aff'g on the opinion of the trial court,* 11 [Pa] D. & C.2d 447 (1957). A misrepresentation is material when it is of such a character that if it had not been made, the [agreement] would not have been entered into. *Greenwood v. Kadoich,* 239 Pa.Super. 372, 357 A.2d 604 (1976).

*Catagnus v. Montgomery County,* 113 Pa.Cmwlth. 129, 135, 536 A.2d 505, 508 (1988). *Accord: New York State Electric and Gas Corp. v. Westinghouse Electric Corp.,* 387 Pa.Super. 537, 552–53, 564 A.2d 919, 927 (1989).

 While the requirements of Pennsylvania Rule of Civil Procedure 1019(b) are satisfied if "plaintiff pleads facts sufficient to permit defendant to prepare his defense[,] plaintiff must set forth the exact statements or actions plaintiff alleges constitute the fraudulent misrepresentations." *McGinn v. Valloti,* 363 Pa.Super. 88, 91, 525 A.2d 732, 734 (1987). Appellants in the instant case alleged that appellees intentionally misrepresented that

each and every primary care physician provided by defendants HMO satisfied criteria for participation as a qualified physician after passing vigorous screening criteria established by Defendants HMO [and] that the primary care physicians with whom they enrolled under the terms of the contract with Defendants HMO would promptly and properly refer patients to appropriate specialists as required for necessary medical treatment;

and that appellants' decedent, as a result of her reliance on these statements which are alleged to be intentionally false and misleading, sustained the injuries previously described. Thus, the allegations of the complaint, while inartful at best, are sufficient to withstand a demurrer.

144

### III. PUNITIVE DAMAGES.

■ As for the claim for punitive damages:
A request for punitive damages does not constitute a cause of action in and of itself. Rather, a request for punitive damages is merely incidental to a cause of action. *Nix v. Temple University*, 408 Pa.Super. 369, 380, 596 A.2d 1132, 1138 (1991). And, of course, a cause of action for misrepresentation can support a claim for punitive damages:

> Punitive damages are defined by Section 908(1) [of the Restatement (Second) of Torts] as damages other than compensatory or nominal, "awarded against a person to punish him for outrageous conduct." Thus, exemplary damages are proper when the act which creates actual damages also imports insult or outrage, and is committed with a view to oppress or is done in contempt of plaintiffs' rights. *Golomb v. Korus*, 261 Pa.Super. 344, 396 A.2d 430 (1977); *See U.S. ex rel. Motley v. Rundle*, 340 F.Supp. 807 (E.D.Pa.1977). Punitive damages may be given when the act is done with reckless indifference, as well as, bad motive. *Bacica v. Board of Ed. of Sch. Dist. of Erie*, 451 F.Supp. 882 (W.D.Pa.1978). Thus, a court may not award punitive damages merely because a tort has been committed. Additional evidence must demonstrate willful, malicious, wanton, reckless or oppressive conduct. *Pittsburgh Outdoor Adv. Co. v. Virginia Manor Apts., Inc.*, 436 Pa. 350, 353, 260 A.2d 801, 803 (1970); *Hughes* [v. Babcock], 349 Pa. [475] 480, 37 A.2d [551] 554 [1944]; *See also: Franklin Music Co. v. American Broadcasting Co., Inc.*, 616 F.2d 528, 542 (3rd Cir.1979). Though this rule seems to require the plaintiff to meet an additional burden, it is difficult to picture a fact pattern which would support a finding of intentional fraud without providing proof of "outrageous conduct" to support an award of punitive damages.

*Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 129–30, 464 A.2d 1243, 1263 (1983).

"Outrageous conduct" has been defined as:

an "act done with a bad motive or with a reckless indifference to the interests of others." *Focht v. Rabada,* 217 Pa.Super. 35, 38, 268 A.2d 157 (1970) citing comment (b) to section 908 of the Restatement of Torts.

"Reckless indifference to the interests of others", or as it is sometimes referred to, "wanton misconduct", means that "the actor has intentionally done an act of an unreasonable character, in disregard to a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Evans v. Philadelphia Transportation Company,* 418 Pa. 567, 574, 212 A.2d 440, 443 (1965). *Smith v. Brown,* 283 Pa.Super. 116, 120, 423 A.2d 743, 745 (1980).

■ Appellees will, of course, be afforded ample opportunity to ascertain, prior to trial, whether the evidence which appellants believe establishes "reckless indifference" is sufficient to submit the claim for punitive damages to the jury. *See Moran v. G. & W. J. Corson, Inc.,* 402 Pa.Super. 101, 111–20, 586 A.2d 416, 422–425 (1991). It is premature, however, based upon the allegations contained in the complaint, to dismiss the claim for punitive damages.

## IV. CONTRACT CLAIMS.

■ Similarly, the averments of fact contained in the complaint are sufficient to withstand a demurrer as to the cause of action sounding in contract.[10] *Cf. Cassell v. Shellenberger,* 356 Pa.Super. 101, 103–05, 514 A.2d 163, 165 (1986). Appellants specifically asserted in the complaint that based upon appellees' representations, made to appellants' decedent

> through contracts and other documentation presently within their possession, that the primary care physicians had to undergo vigorous screening and meet certain

---

**10.** The preliminary objection based upon the failure to attach a copy of the contract is meritless since appellants alleged that the contract and other documents were in the possession of appellees and set forth the substance of those documents. *See* Pa.R.C.P. 1019(h).

criteria to be qualified as a primary care physician for defendant; that defendant, Joseph A. Hempsey, D.O. did undergo their screening, met their criteria and was qualified as a primary care physician; and that patients would be referred by their primary care physician to appropriate specialists as required for necessary medical treatment, plaintiff enrolled herself and her family with Defendants HMO for all the family medical care and executed a contract with Defendants HMO for them to provide said medical care.

Appellants also alleged that appellees had breached the provisions of the contract which required them to provide the decedent with a qualified primary care physician who would provide reasonably competent medical care, including appropriate referrals, and that as a result of the appellees' breach, appellants' decedent suffered the injuries described. These allegations are sufficient to state a claim for breach of contract sufficient to withstand a demurrer.

## V. PREEMPTION BY ERISA.

█ Appellees further demurred to the complaint on the grounds that the appellants' claims were preempted by ERISA, 29 U.S.C. §§ 1001–1461. Resolution of this issue, insofar as concerns the negligence claims, is controlled by our opinion in *DeGenova v. Ansel*, 382 Pa.Super. 213, 555 A.2d 147 (1988), wherein we rejected an identical preemption claim:

Section 514(a) of ERISA provides:

The provisions of this title and Title IV shall supersede any and all state laws insofar as they may now or hereafter *relate to* any employee benefit plan.... 29 U.S.C. § 1144(1) (emphasis supplied).

The preemptive provision of ERISA was meant to establish pension plan legislation as an exclusively federal concern, reserving for the federal government the sole power to regulate the field of employee benefit plans. *McMahon v. McDowell*, 794 F.2d 100, 106 (3rd Cir.1986). While the statutory scheme provides the government with

broad powers to regulate employee pension plans, "ERISA is not all encompassing." *Lane v. Goren* 743 F.2d 1337, 1339 (9th Cir.1984). The test to determine if a cause of action is preempted by ERISA remains whether or not the action "relates to" ERISA, and is not merely remotely related to the act. *Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). In the present case, we find that the appellants' state law claims do not "relate to" ERISA and, therefore, are not preempted by the statute. Initially we observe that appellants are not seeking ERISA benefits or claiming improper distribution or administration of potential ERISA benefits. In addition, appellant, if these claims were found to be preempted by ERISA, would not be able to bring a similar civil action under ERISA, *see* 29 U.S.C. § 1132(a), and would have no remedy whatsoever against ALICO.

*DeGenova v. Ansel, supra*, 382 Pa.Superior Ct. at 219, 555 A.2d at 150. It merits mention that this court finds reassuring support for the *DeGenova* decision in the recent opinion of the distinguished Judge Herbert J. Hutton of the U.S. District Court for the Eastern District of Pennsylvania in *Kohn v. Delaware Valley HMO, Inc.*, 1991 WL 275609 (Civil Action No. 91–2745; filed December 20, 1991), as well as the opinion of the esteemed Judge Franklin S. Van Antwerpen in *Independence HMO, Inc. v. Smith*, 733 F.Supp. 983 (E.D.Pa.1990).

The issue of preemption of the contract claims, however, is an issue which cannot be resolved on the very limited record presently before this Court. If HMO PA is a valid ERISA employee benefit plan, it would appear that the contract claims are preempted. However,

"[t]he existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances from the point of view of a reasonable person." *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982). Five elements comprise an ERISA welfare plan:

(1) A "plan, fund or program" (2) established or maintained (3) by an employer or by an employee organiza-

tion, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to the participants or their beneficiaries. *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir.1988) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir.1982) (en banc)).

The MDP Plan, established by MDP Associates, Inc., is not fully insured and is controlled by three individuals who also control MDPhysicians of Amarillo, Inc., an independent practice association consisting of over 130 physicians in the Amarillo area. Stipulation at 1-2. Participants in the MDP Plan have a choice of seeking treatment from a network medical service provider, where the Plan pays 90% of the medical expenses incurred, or from a non-network medical service provider, where the Plan pays 80% of the expenses. Stipulation at 3.

Participants in the MDP Plan are not limited to employees of the physicians who established the MDP Plan.

\* \* \* \* \* \*

Likewise MDPhysicians Associates, Inc., does not act directly as an employer or indirectly in the interest of any employer. 29 U.S.C. § 1002(5). Courts construing the language of ERISA have concluded that a person or corporation cannot possibly act in the interest of employers when such employers have no voice in the management or operation of the plan because no basis for an agency relationship exists. *See Bell v. Employee Security Benefit Ass'n*, 437 F.Supp. 382, 393 (D.Kan.1977); *Hamberlin v. VIP Insurance Trust*, 434 F.Supp. 1196, 1198 (D.Ariz.1977); *Matthew 25 Ministries, Inc. v. Corcoran*, 771 F.2d 21, 22 (2d Cir.1985).

Plaintiff is not an "employer" as defined by case law. The participating employers do not participate in the day-to-day operation or administration of the plan contrary to Fifth Circuit precedent. *Taggart Corp. v. Life and*

*Health Benefits Administration, Inc.,* 617 F.2d 1208, 1210 (5th Cir.1980). The MDP Plan in fact is controlled by the same three individuals that control MDP Physicians of Amarillo, Inc. The Fifth Circuit has held, under similar circumstances, that a plan established and "maintained by entrepreneurs for the purpose of marketing products or services to others" would not be acceptable as an ERISA plan because the Act did not intend to cover mere purchases of insurance. *Id.* at 1210–11. The fact that the subscribing employers, as in the case at hand, are unrelated is further support for the proposition that the plan is marketing insurance coverage to the employers. *Matthew 25 Ministries, Inc. v. Corcoran,* 771 F.2d 21, 22 (2nd Cir.1985); *Taggart,* 617 F.2d at 1210.

*MDPhysicians and Assoc., Inc. v. Wrotenbery,* 762 F.Supp. 695, 697–698 (N.D. Texas 1991) (footnote omitted).

Since the record is wholly inadequate to resolve this issue, as well as others relevant to resolution of the preemption issue, *see, e.g.: Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Insurance Board Under the Social Insurance Plan of Bethlehem Steel Corporation v. Muir,* 819 F.2d 408 (3rd Cir.1987), the preliminary objection based upon preemption must be rejected without prejudice to the right of appellees to raise the issue upon remand.

Order reversed. Complaint reinstated. Case remanded. Jurisdiction relinquished.