**Free v. Ohl**

*William A. Atlee,* for plaintiffs.
*F. Evan Black,* for defendant.

SPICER, *P.J.* November 17, 1992—Plaintiffs, a married couple, by their complaint, filed August 18, 1992, seek damages for what they characterize as an unauthorized tubal ligation performed on Mrs. Free by Dr. Ohl. The Frees sue in negligence as well as battery and Mr. Free seeks damages for loss of consortium. A demand for punitive damages is made in connection with the battery action, Count II.

The doctor's preliminary objections attack the negligence count (I), the demand for punitive damages (paragraph 16) and Mr. Free's action (Count III). We will address these in order.

*Negligence:* Unauthorized medical procedures, no matter how competently performed, may give rise to a cause of action for battery unless accomplished in the course of medical emergency. *Levenson v. Souser,* 384 Pa. Super. 132, 557 A.2d 1081 (1989). *Millard v. Nagle,* 402 Pa. Super. 376, 587 A.2d 10 (1991),[1] *alloc. granted,* 527 Pa. 667, 593 A.2d 842, *affirmed,* 533 Pa. 410, 625 A.2d 641 (1993).

Plaintiffs allege nothing to indicate that the operation was sloppily performed. Assertions of negligence are grounded solely on defendant's failure to obtain Mrs. Free's informed consent. It is, therefore, clear that this count should be dismissed.

*Punitive damages:* Plaintiffs argue that their entitlement to punitive damages must await further proceedings.

---

1. We will have other comments to make about this case later. For the time, it is sufficient to say that liability may be absolute. See concurring opinion by Judge Johnson, especially, and *Moure v. Raeuchele,* 387 Pa. Super. 127, 563 A.2d 1217 (1989).

Counsel stated, at oral argument, that enough had been alleged to escape preliminary objections. We disagree.

Reading the complaint, as a whole, we have allegations that the doctor intentionally performed the operation. Then, plaintiffs allege:

"(16) In addition, Dr. Ohl's actions constitute a technical battery subjecting her to punitive damages."

Punitive damages are properly awarded to punish a defendant for outrageous conduct.

"'Outrageous conduct' has been defined as:

"'an "act done with a bad motive or with a reckless indifference to the interests of others." *Focht v. Rabada,* 217 Pa. Super. 35, 38, 268 A.2d 157, 159 (1970), citing comment (b) to section 908 of the Restatement of Torts.

"'*Reckless indifference to the interests of others,* or as it is sometimes referred to, *wanton misconduct,* means the actor has intentionally done an act of an unreasonable character, in disregard to a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. *Evans v. Philadelphia Transportation Co.,* 418 Pa. 567, 574, 212 A.2d 440, 443 (1965).' *Smith v. Brown,* 183 Pa. Super. 116, 120, 423 A.2d 743, 745 (1980)." *McClellan v. Health Maintenance,* 413 Pa. Super. 128, 145, 604 A.2d 1053, 1061 (1992).

Generally, physicians are not liable for punitive damages unless negligence is wanton or gross. 61 Am.Jur.2d, *Physicians and Surgeons,* §371. While some torts embody the bad mental attitude necessary for exemplary damages, others don't.[2]

---

2. As an example, in *Noyes v. Cooper,* 396 Pa. Super. 592, 579 A.2d 407 (1990), Superior Court distinguished between actual and constructive fraud. Only actual fraud encompasses the mental attitude similar to that involved in a crime and justifies exemplary damages.

It might seem that plaintiffs, by alleging intentional conduct, have said enough. However, it is not the medical procedure itself that gives rise to the cause of action, but lack of consent coupled with the operation. Lack of informed consent runs a wide range from failure to fully explain a risk to no discussion and no consent at all.

While we are tempted to follow the approach suggested in *McClellan v. Health Maintenance, supra,* and delay decision,[3] we find it important to declare that not every technical battery justifies punitive damages.

We strike the demand for punitive damages but allow plaintiff to amend. If allegations justify punitive damages, we will postpone further action until plaintiff has an opportunity to assemble proof. If defendant moves for summary judgment, we can then decide.

*Loss of Consortium:* Generally, a physician is liable only to his patient for injuries caused. There are exceptions, such as when the risk of transmittal of a communicable disease is known to the doctor. *DiMarco v. Lynch Homes-Chester County Inc.,* 384 Pa. Super. 463, 559 A.2d 530 (1989), or when injuries deprive a spouse of services. 61 Am.Jur.2d, *Physicians and Surgeons,* §369.

Courts have said:

"'In this Commonwealth, loss of consortium has been recognized as a right growing out of the marriage re-

---

3. Superior Court said it was premature, based on allegations in the complaint, to dismiss a claim for punitive damages. "Appellees will, of course, be afforded ample opportunity to ascertain, prior to trial, whether the evidence which appellant believes establishes 'reckless indifference' is sufficient to submit the claim for punitive damages to the jury." *McClellan* at 145, 604 A.2d 1053. The complaint in that case, however, alleged outrageous conduct.

lationship which the husband and wife have respectively to the society, companionship and affection of each other in their life together. As thus defined and limited, any interference with this right of consortium by the negligent injury to one spouse, should afford the other spouse a legal cause of action to recover damages for that interference.' *Leo v. Bottman,* 40 Wash. L.J. 105, 108-09 (1960).

"The right to recover for loss of consortium springs from the English common law and once extended solely to a husband's recovery for the loss of service rendered to him by his wife. That right was later expanded in this county to include a wife's recovery for the loss of services rendered by her husband. Pennsylvania law originally followed the common law rule, but acknowledged a wife's right to recover damages for the loss of her injured husband's services under a loss of consortium theory in *Hopkins v. Blanco,* 224 Pa. Super. 116, 302 A.2d 855 (1973), *aff'd.,* 457 Pa. 90, 320 A.2d 139 (1974). Under *Hopkins,* those services which may be compensated for in damages by either spouse are: 'whatever of aid, assistance, comfort, and society [one spouse] would be expected to render or bestow upon [the other], under the circumstances and in the condition in which they may be placed.' Id. at 117, 302 A.2d at 856.

"[1-3] It is clear from the above, that a consortium claim is grounded on the loss of a spouse's services after injury. In calculating the extent of the deprivation to the spouse claiming loss of consortium and disruption to the family life caused by the loss of those services normally performed by the injured spouse, certainly the parties' interpersonal relationships and the state of their marriage immediately before the injury is helpful in calculating any loss sustained after it, and is therefore rele-

vant." *Burns v. Pepsi-Cola Metropolitan Bottling,* 353 Pa. Super. 571, 575-76, 510 A.2d 810, 812 (1986).

The right of action was described by Supreme Court as "of ancient lineage in law and custom." *Buttermore v. Aliquippa Hospital,* 522 Pa. 325, 331, 561 A.2d 733, 736 (1989).

Mr. Free argues that services include reproductive services and he has, therefore, standing to bring this suit. Unfortunately, despite ancient lineage, no cases deal directly with this point. Plaintiffs have been unable to provide authority for their position and the court's independent research discloses none. All known authorities deal with services in that word's usual meaning and spring from unwanted pregnancies when sterilization operations have failed to achieve desired results. See 27 A.L.R.3d 906. We have found nothing to uphold a husband's right to recover for loss of a wife's fecundity.

There are some suggestions that a husband's consent is not necessary for a wife's sterilization, 89 A.L.R.4th 799, 12(a). This might indicate the lack of cognizable legal rights to a wife's fertility. However, it also means nothing, since the action is derivative and can be destroyed by a number of things, including contributory negligence in appropriate cases.[4]

We noticed that a husband and wife sued in *Millard v. Nagle, supra.* The case involved removal of an ovary, resulting in sterilization. Superior Court's opinion gives no indication of husband's participation in the suit. The majority opinion referred to appellants,[5] at the beginning, but concluded by saying "Ms. Millard should be entitled

---

4. A husband's consent is necessary, in Pennsylvania, to settle his consortium claim, even when his wife has settled her action. See *Buttermore v. Aliquippa Hospital, supra.*

5. Plaintiffs lost at trial, won on appeal.

to recover for any damages suffered as a result of the unauthorized removal of her ovary." *Id.* at 388, 587 A.2d at 16. Nothing was said about Mr. Millard's rights.

A telephone call to Bradford County was unproductive because the file is now in Supreme Court. However, we were told that nobody remembered an issue of consortium being raised. Based on facts recited in Superior Court's opinion, one can reasonably conclude Mr. Millard sued for such loss. Nothing else would give him standing.

We feel that the ancient right to services does not include reproductive services. However, case law is far from settled and clear. On balancing defendant's interest in simplifying issues against husband's interest in recovery, we can see little disadvantage in postponing decision.

## ORDER OF COURT

And now, November 17, 1992, Count I is dismissed. No right of amendment is granted. The demand for punitive damages is also dismissed, without prejudice to plaintiffs amending. All other objections are dismissed.

Plaintiffs may file an amended complaint within 20 days.