**Gentex Corp. v. Crew Systems Corp.**

384

*Daniel T. Brier* and *Donna A. Walsh*, for plaintiff.
*Marianne J. Gilmartin*, for defendant.

MINORA, *J.*, June 21, 2011—Defendant in this commercial dispute has filed a number of preliminary objections to the amended complaint of plaintiff. This in turn has fueled numerous preliminary objections to the preliminary objections noted above. Plaintiff has also filed objections to defendant's amended counterclaim resulting in more preliminary objections to plaintiff's preliminary objections. They are now all ripe for disposition. Defendant Crew System, Inc. (hereinafter "Crew") was employed by plaintiff Gentex Corporation (hereinafter "Gentex") as a sub-contractor in anticipation of submitting a competitive proposal for the design and manufacture of air masks for the United States Air Force (hereinafter "USAF").

## FACTUAL BACKGROUND

The proposal for the USAF involved air masks to be used by the USAF for their Joint Services Aircrew Mask (hereinafter "JSAM") project. In furtherance of their goal, Gentex, Crew and a third company, ILC Dover, entered into a Teaming Agreement on or about May of 2000. This agreement was attached to Gentex's Complaint as Exhibit "A."

The allegation is that this teaming agreement bound these three parties, Gentex, Crew and ILC Dover, to be exclusive members of the Gentex team not participating with any other competitor during the JSAM proposal and program.

The rationale for this exclusivity was that Gentex anticipated sharing highly proprietary information with Crew and therefore there was an expectation of confidentiality and exclusivity among all team members.

The JSAM program had three distinct phases, which were:

(1) Program definition and risk reduction (hereinafter "PDRR")

(2) System development and demonstration (hereinafter "SDD")

(3) Production which would be awarded to the successful SDD contractor.

Additionally, Gentex alleges that all parties to this teaming agreement also agreed that they would keep in confidence all proprietary information belonging to any other team members and neither disclose the confidential information to any third party nor use such information for their own competitive benefit.

Ultimately, the parties worked together to create an initial proposal for the JSAM program. Gentex claimed it shared their highly proprietary and confidential information with Crew and other team members in the formulation of this proposal.

The initial Gentex/Crew team proposal to the USAF was unsuccessful and in 2002 the USAF chose to select another competing contractor named Scott. In 2005, the USAF, unhappy with Scott, again sought proposals from manufacturers interested in replacing Scott for the fixed

wing portion of the JSAM program.

In response to this second call for JSAM proposals from the USAF, Gentex alleges that Crew elected to improperly partner with another manufacturer known as BAE Systems (hereinafter "BAE") in pursuit of the 2005 JSAM program. Accordingly, Gentex commenced this suit on May 5, 2005 to enjoin Crew from pursuing the 2005 JSAM program on its own or in collaboration with BAE or any other potential partner/competitor of Gentex. Gentex further sought to prevent Crew from disclosing any proprietary information, trade secrets or confidential information belonging to Gentex and/or other team members from the original teaming agreements.

Crew argues that the initial contract award by the USAF to Scott effectively terminated the teaming agreement. Crew further argues that the conduct of the parties between 2002, the time of the first USAF contract award to Scott, and the time of the second bid in 2005 verifies that the original teaming agreement is no longer valid. This argument ignores the time duration language in the original teaming agreement which binds the parties, "... during the JSAM proposal and program" (See clause 1(a) of the teaming agreement).

Gentex pursued the 2005 USAF request for proposals and submitted a proposal in November 2005. On April 13, 2006, the Air Force announced its decision to award the JSAM contract to the Gentex team. SSD work on the awarded contract began immediately and was anticipated to last multiple years.

On or about May of 2006, Vision System International

(hereinafter "Vision") announced its intention to solicit proposals from members of the industry who had an interest in supplying a chemical/biological respirator for use in connection with the joint strike fighter (hereinafter "JSF") being developed by Lockheed Martin for the USAF.

The JSF was identified as a fixed wing aircraft on which the JSAM platform may be employed. Accordingly, Gentex alleges that the JSF program became essentially a continuation of the original JSAM program and thus is encompassed by the original teaming agreement from 2000.

Despite the Gentex position that the JSF represented a continuation of the JSAM program and was thus covered under the original teaming agreement on June 26, 2006 officials from Crew attended a bidders conference either on its own or in conjunction with a bidder who is a Gentex competitor and not within the teaming agreement.

## PROCEDURAL BACKGROUND

### Gentex Complaint/Amended Complaint

This multiyear protracted and tortuous factual history resulted in Gentex filing a four-count complaint. Count I alleged a breach of contract essentially alleging that the teaming agreement remained in full force and effect and that it was never terminated. It further alleged that Crew materially breached the teaming agreement in its collaboration with BAE or any other Gentex competitor on either the JSAM or JSF projects.

Court II of the complaint alleged a violation of the

Uniform Trade Secrets Act (12 Pa. C.S.A. §5301). Factually, it stated that Crew has access to Gentex's information and drawings and improperly misappropriated these Gentex-owned trade secrets for Crew's own benefit. It seeks injunctive relief as well as counsel fees and damages as allowed by statute.

Count III seeks a permanent injunction against Crew to enjoin Crew from any pursuit of the JSAM program technology alone or with others. Further, it seeks declaratory relief that the original teaming agreements' non-disclosure provisions remain valid and enforceable.

Count IV alleges a violation of the State of California's Uniform Trade Secrets Act explaining that the teaming agreement includes their choice of law provisions and alleging violations similar to those summarized at counts I, II and III above.

Gentex later filed an amended complaint consisting of substantially similar allegations to those outlined above on November 20, 2006; however, it factually updated the complaint to the 2005 contract lawsuit.

### Crew's Amended Counterclaim

Not to be outdone in making allegations of misconduct, Crew has filed amended counterclaims to Gentex's pleadings outlined above.

Crew alleges in its counterclaim that during the initial collaboration with Gentex and ILC Dover during the PDRR and SDD phases of the first USAF proposal, Crew solely designed and developed highly technical components without either technical or financial assistance from either

Gentex or ILC Dover.

Crew alleges that these three components are their sole and exclusive intellectual property and that Gentex continued to improperly use these technical components in pursuit of its JSAM and JSF business with the USAF.

Those technical components are alleged to be:

(1) T-connector

(2) Emergency Demist Value

(3) Checked Bladder Control

Crew also argues, using its own findings and without any technical contribution from Gentex and ILC Dover, it invented and developed a high-performance fixed wing solution contained in the original SDD proposal to the USAF. This solution is called "Adjustable OFR Handshell Concept."

Crew claims this concept and the three technical concepts noted above are their trade secrets and their intellectual property arising during the time that they collaborated with Gentex and ILC Dover.

Crew goes on to assume the legal position that once that original work was lost by awarding the SDD contract to Scott, the teaming agreement terminated. A further argument that the original teaming agreement terminated is that Gentex and Crew could never agree on a subcontractor's statement of work before the SDD award to Scott as was alleged to be required by the teaming agreement.

In furtherance of Crew's position that the teaming agreement expired in November 2002, Crew alleges Gentex directed its employees to cease and desist all business discussions with Crew in January of 2003.

Crew says yet a further indication that the original teaming agreement was no longer in effect arose in September of 2004 when Gentex and ILC Dover met to discuss their plan to respond to an anticipated new solicitation by the USAF for a JSAM respirator. Crew says they were never invited into this new round of USAF solicitations nor did they submit a 2005 proposal. Once again clause 1(a) of the teaming agreement says that the agreement lasts "...during the JSAM propseal and program."

In addressing the issues of the JSF and Vision, Crew posits that VST is a subcontractor to Lockheed Martin Aeronautical Company in the JSF program. VSI submitted a proposal to the USAF in May of 2006 to develop a respirator compatible with the current JSF helmet and optical system for the JSF aircraft. Crew says that this JSF program is totally distinct and unrelated from any past JSAM request for proposals from the USAF including especially the request for proposals that gave rise to the original teaming agreement. Crew argues that the VSI JSF solicitation is essentially totally unrelated to JSAM.

The court finds it difficult to discern Crew's contradictory position that these matters are totally unrelated to the original JSAM proposal when at the same time Crew asserts the continued use of their three proprietary components from JSAM as well as the OFR

Handshell concepts which allegedly arose out of JSAM. Crew asserts these components still remain viable in Gentex's present contractual relationship with the USAF.

Crew says that the three technical components and the adjustable OFR Hardshell Concepts are their sole and exclusive intellectual property that has been maliciously and willfully misappropriated by Gentex in violation of Pennsylvania and California Uniform Trade Secrets Acts. Crew too is seeking injunctive relief against Gentex.

Making allegations that mirror image Gentex's allegations, Crew alleges breach of contract — restraint of trade under California Law Cal. Bus. and Professional Code §16600. They seek unfair competition relief under California Code §§17000 and 17200. They seek relief for unjust enrichment; intentional interference with prospective economic advantages and declaratory and injunctive relief as well as all damages allowed by law.

### Gentex Preliminary Objections to Crew's Amended Counterclaim

Gentex, in response to Crew's counterclaim, has filed preliminary objections *demurring* under Pa. R.C.P. 1028(a)(4) to count III, the California Uniform Trade Secrets Act. Gentex also *demurs* to count IV pursuant to Pa.R.C.P. 1028(a) alleging that disclosure of all to the USAF was authorized and contemplated by the teaming agreement and since this was Gentex's only disclosure, it cannot be the basis for a breach of contract cause of action. They further allege that such a claim by Crew against Gentex is time barred by California Code of Civil Procedure §337 which sets a four-year statute of limitations. They go on

to allege that since Crew knew this in September of 2002 and did not raise it within four years, it is barred.

Gentex also *demurred* to count V under California Business and Professional Code § 16600; count VI unfair competition; count VII unjust enrichment; and count VIII intentional interference.

Finally, Gentex files a motion to strike count IX and raises the affirmative defense of statute of limitations in Crew's counterclaim for a violation of the Uniform Trade Secrets Act.

### *Crew's Preliminary Objections to the Gentex Preliminary Objections*

Gentex also raises what it improperly calls the affirmative defense of statute of limitations against Crew's amended counterclaim allegations of breach of contract.

In response, Crew properly states that raising as a defense, the bar of statute of limitations must be done as new matter under Pa.R.C.P. 1030 and cites Superior Court case law in *Devine v. Hutt*, 863 A.2d 1160 (Pa. Super. 2004), for this proposition unless the particular statute of limitations is non-waivable.

A limitation period is unwaivable when it implicates the court's fundamental jurisdiction to entertain a claim. Neither statute under which Crew raised its amended counterclaims are jurisdictional in nature. Therefore, Gentex must raise the statute of limitations as new matter. See Pa.R.C.P. 1030.

### *Crew's Preliminary Objections to Gentex's Amended*

*Complaint*

Crew generically claims that Gentex's amended complaint fails to state a legally sufficient claim for breach of contract in violation of Pa.R.C.P. 1028(a)(4), essentially stating that Gentex will never be able to show actual damages because it ultimately obtained the JSAM from the USAF. Crew says damages are an essential element of the cause action for breach of contract which Gentex cannot claim. Therefore, Gentex cannot legally state a claim.

Crew's next objection states that since Gentex now has been awarded the JSAM contract, there is nothing to enjoin and count I shoud be dismissed.

Crew's next objection is the failure to attach a writing to the breach of contract claim in violation of Pa.R.C.P. 1019(i). First, it is presumed that since both Crew and Gentex signed the original teaming agreement along with ILC Dover in 2000, they must have a copy of this document which represents their contract forming the basis of this suit. No one has denied that they possess the teaming agreement contract.

The 2000, 2002 and 2005 systems requirements can be acquired in discovery.

The next Crew objection to Gentex's amended complaint is that count II under the Pennsylvania Uniform Trade Secrets Act fails to state a legally sufficient cause of action because only choice of California law is an option under the teaming agreement. Even assuming Pennsylvania law applied, no misappropriation has been shown.

Crew objections to count III cannot apply, it is alleged, because the USAF awarded the contract to Gentex on April 13, 2006 and, therefore, there is nothing left to enjoin. Crew also once again raises the systems requirements writing arguments of 2000, 2002 and 2005 noted above.

Crew objects to count IV, the California Uniform Trade Secrets Act section pursuant to Pa. R.C.P. 1028(a)(3). It generally alleges lack of sufficient specificity and failure to adequately state a claim. The essence of this objection is that the pleading tracks the statutory language but never identifies what specific trade secrets Crew's supposed to have taken from Gentex. Absent that, Gentex cannot show a "misappropriation" by Crew.

*Gentex's Preliminary Objections to Crew's Preliminary Objections to Gentex's Amended Complaint*

Gentex argues that Crew's preliminary objections to Gentex's amended complaint are essentially improper attempts to challenge the evidence rather than challenging the sufficiency of the allegations pled in Gentex's amended complaint. Gentex alleges that this defective approach by Crew is a patent violation of the directives of Pa.R.C.P. 1028(a)(4).

STANDARDS FOR PRELIMINARY OBJECTIONS

My colleague Judge Terrence R. Nealon has recently visited the standards for preliminary objections in the case of *Sparrow et al. v. Pace et al.*, 2010 CV 5086, filed February 11, 2011 at page 8. In that authoritative opinion he ruled:

[A] preliminary objection in the nature of a demurrer

is properly granted where the contested pleading is legally insufficient. *Jones v. Nationwide Property and Cas. Ins. Co.*, 995 A.2d 1233, 1237 (Pa. Super. 2010). In making that determination, all material facts set forth in the challenged pleading and all inferences reasonably deducible therefrom are accepted as true. *Foster v. UPMC South Side Hospital*, 2 A.2d 655, 662 (Pa. Super. 2010). Preliminary objections may be sustained only in cases that are clear and free from doubt, and to be deemed clear and free from doubt, "it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred." *Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania*, 7 A.3d 278, 282-283 (Pa. Super. 2010).

We ruled similarly in the case of *Menichello v. The Borough of Clarks Summit*, 09 CV 6251, at pages 3 and 4.

Preliminary objections are governed by Pa.R.C.P. 1028. "Preliminary objections in the nature of [a] demurrer test the legal sufficiency of the plaintiff's complaint." *State Farm Mut. Auto. Ins. Co. v. Ware's Van Storage*, 953 A.2d 568, 571 (Pa. Super. 2008) (quoting *Sexton v. PNC Bank*, 792 A.2d 602, 604 (Pa. Super. 2002)). It is not necessary that the plaintiff identify the specific legal theory underlying the complaint, as it is the court's duty to discover from the facts alleged in a complaint the cause of action, if any, stated therein. *Cardenas v. Schober*, 783 A.2d 317, 325 (Pa. Super. 2001). Accordingly, the court must examine the complaint to determine whether it sets forth a cause of action that,

if proven, would vest the plaintiff with a right to relief. *State Farm Mut. Auto. Ins. Co.*, 953 A.2d at 571.

The Commonwealth Court provided the guidelines for examining legal insufficiency of a pleading (demurrer) in *Richardson v. Beard*, 942 A.2d 911, 913 (Pa. Cmwlth. 2008) (citations omitted):

In considering preliminary objections, we must consider as true all well-pleaded material facts set forth in the petition and all reasonable inferences that may be drawn from those facts. *Preliminary objections will be sustained only where it is clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief.* We need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations or expressions of opinion. (emphasis added).

"The question presented by the *demurrer* is whether, on the facts averred, the law says with certainty that no recovery is possible." *Mistick Inc. v. Northwestern Nat'l Cas. Co.*, 806 A.2d 39, 42 (Pa. Super. 2002) (citation omitted). Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside the complaint may be considered to dispose of the legal issues presented by the demurrer. *Cooper v. Frankford Health Care System, Inc.*, 2008 WL 4615714, 6 (Pa. Super. 2008). (citation omitted) Any doubt as to the legal sufficiency of the complaint should be resolved in favor of overruling the demurrer. *Kane v. State Farm Fire & Gas Co.*, 841 A.2d 1038

(Pa. Super. 2003). Further, the rules of civil procedure are to be liberally interpreted. See, Pa.R.C.P. 126.

*Insufficient Specificity Pa. R.C.P. §1028(a)3.*

In *Sparrow*, supra, Judge Nealon at pages 8 and 9 also addressed the issue of insufficient specificity. In that authoritative opinion he stated:

Defendants also raise preliminary objections pursuant to Pa. R.C.P. 1028(a)(3) and seek to strike certain averments on the grounds of insufficient specificity. The purpose of a complaint is to place the defendant on notice of the claims upon which [s]he will have to defend. *Carlson v. Community Ambulance Services, Inc.*, 824 A.2d 1228, 1232 (Pa. Super. 2003); *Lavelle Murray v. Haggerty*, 2 D.&C. 5th 338, 346-347 (Lacka. Co. 2006); *Mulderig v. Allstate Insurance Company*, 105 Lacka. Jur. 1,8 (2003). "Under Pennsylvania's fact pleading system, the complaint need only state the material facts upon which a cause of action is based." *Grossman v. Burke*, 868 A.2d 561, 569 (Pa. Super. 2005), app. denied, 585 Pa. 697, 889 A.2d 89 (2005); *Lavelle Murray*, 2 D.&C. 5th at 347.

"To determine if a pleading is sufficiently specific, a court must ascertain whether the facts alleged are sufficiently specific to enable a defendant to prepare his defense." *Unified Sportsman of Pennsylvania v. Pennsylvania Game Commission*, 950 A.2d 1120, 1134 (Pa. Cmwlth. 2008). *Accord, Rambo v. Greene*, 906 A.2d 1232, 1236 (Pa. Super. 2006). When considering whether the allegations of the complaint have been stated

with adequate specificity, one portion of the complaint should not be examined in isolation and should instead "be read in context with all other allegations in that complaint." *Rachlin v. Edmission*, 813 A.2d 862, 870 (PA. Super. 2002); *Yacoub v. Lehigh Valley Medical Associates*, 805 A.2d 579, 589 (Pa. Super. 2003), app. denied, 573 PA. 692, 825 A.2d 639 (2003); *Mulderig*, supra. "Only then can the court determine whether the defendant has been put upon adequate notice of the claim against which [s]he must defend." *Grossman*, 868 A.2d at 569; *Lavelle Murray*, supra."

*Failure to Attach a Writing Pa.R.C.P. 1019(i)*

Again, we refer to *Sparrow*, supra, at page 31 wherein Pa.R.C.P. 1019(i) is authoritatively referenced by Judge Nealon.

Pennsylvania Rule of Civil Procedure 1019(i) states that "[w]hen any claim...is based upon a writing, the pleader shall attach a copy of the writing or that material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing." Pa. R.C.P. 1019(i). The failure to attach a relevant writing to a pleading is generally considered to be a fatal defect, see, *Atlantic Credit and Finance, Inc. v. Giuliana*, 829 A.2d 340, 345 (Pa. Super. 2003), app. denied, 577 Pa. 676, 843 A.2d 1236 (2004), and "[o]rdinarily, a complaint should be stricken for failure to attach an essential document." *Adamo v. Cini*, 656 A.2d 576, 579 (Pa. Cmwlth. 1995). If the pleader avers that the writing is already in the possession of the defendant

and the pleader sets forth the relevant substance of that document, preliminary objections based upon the failure to attach a copy of the document should be overruled. See, *McClellan v. HMO of Pennsylvania,* 413 Pa. Super. 128, 145 n. 10, 604 A.2d 1053, 1061 n. 10 (1992), app. denied, 532 PA. 664, 616 A.2d 985 (1992): *Petty v. Scranton School District,* 101 Lacka. Jur. 137, 145 n. 4(1999).

### New Matter Pa.R.C.P. 1030

Gentex in their preliminary objections to Crew's amended counterclaim raises what they have referred to as the affirmative defense of statute of limitations. Pa.R.C.P. 1030(a) entitled "New Matter" states that, "(a) Except as provided by subdivision (b), all affirmative defense including but not limited to the defenses of...statute of limitations...*shall be pleaded* in a responsive pleading under the heading 'new matter.'" Emphasis added.

At volume 3 Goodrich-Amram section 1030(a):5 that treatise states that, "All affirmative defenses both those specifically listed at Pa.R.C.P. 1030(a) and those not included on the list those set forth *must* be pleaded under the heading 'New Matter.'" Pa. R.C.P. 1030. Emphasis added.

The language of the Rule (1030) is clear and unambiguous and it may not be disregarded. *Evans to the Use of Reading Exp., Inc. v. D'Iorio,* 519 A.2d 983 (Pa. Super. 1987). It is therefore improper to raise any affirmative defenses, in an ordinary case, by *demurrer* or through the use of other preliminary objections. *Morris v. Hanover Two. Brd. of Supervisors,* 4 D.&C. 3rd 245, 1977

WL 366 (CP 1977).

The defense of state of limitations is specifically listed at Pa.R.C.P. 1030(a) as an affirmative defense that may only be raised in a responsive pleading under the heading "new matter" and conversely not as a preliminary objection. *Kyle v. McNamara & Criste*, 506 Pa. 631, 487 A.2d 814 (1985).

When the statute of limitations is properly raised as new matter in the answer and it appears from the allegations on the face of the complaint that the statute of limitations clearly bars the cause of action and there is no theory upon review of the plaintiff's complaint to avoid this bar, then a motion for judgment on the pleadings may be properly brought to assert such a ground. *Giangiordano v. Allstate Ins., Co.*, 482 A.2d 1005 (Pa. Super. 1984).

## DISPOSITIONS

The first series of objections previously outlined in detail above arose from Gentex in response to Crew's amended counterclaim. Initially, Gentex raises a series of preliminary objections in the form of *demurrers* to Crew's counterclaim at counts III, IV, V, VI, VII and VIII.

As noted earlier, preliminary objections in the nature of *demurrers* should be sustained only if, "....assuming the averments of the complaint to be true, the plaintiff has failed to assert a legally cognizable cause of action." *Lerner v. Lerner*, 954 A.2d 1299 (Pa. Super. 2008).

On a preliminary objection in the nature of a *demurrer*, the material facts set forth in the pleading and all inferences reasonably deductible therefrom, must be admitted as true.

*Cooper v. Frankford Healthcare System, Inc.*, 960 A.2d 134 (Pa. Super. 2008), app. denied, 601 Pa. 679, 970 A.2d 431

After a review of the Gentex *demurrers* in the legal context noted above and earlier, it is clear that Crew's amended counterclaim at counts III, IV, V, VI, VII and VIII, on their face, state legally cognizable causes of action and therefore each of the those six *demurrers* by Gentex are dismissed and denied.

As to count IX, Gentex raised a motion to strike. Count IX is essentially an action for equitable relief in the form of declaratory judgment and injunctive relief. The core of this portion of the dispute revolves around the impact of the USAF awarding the original SDD to Scott on or about November 26, 2002.

Crew argues that this USAF award to Scott acted to terminate the teaming agreement. Due to the agreement's termination, Crew argues Gentex was required to cease use of all of Crew's proprietary information, intellectual property and trade secrets in its possession.

Crew contends any continued use by Gentex of Crew's intellectual property is a breach of contract, unfair competition, restraint of trade and interference with the contractual relations and these alleged misdeeds must be enjoined.

Gentex moves to strike these allegations pursuant to Pa.R.C.P. 1028(a)(2) and (8).

Essentially Gentex argues that Crew's count IX does not confirm to law or rules of court and/or it includes

scandalous and impertinent matter. Gentex further argues that Crew has a full, complete and adequate non-statutory remedy at law.

We disagree. The parties' disagreement in the context of count IX comes down to differing views of the impact of the USAF awarding the first SDD to Scott on November 26, 2002. This disagreement does not make the assertions improper, legally deficient or impertinent.

Accordingly, we find the motion to strike filed to count IX by Gentex is dismissed and denied. Since we have denied and dismissed Gentex's six *demurrers* and their motion to strike and thus, denied all of their preliminary objections, Crew's preliminary objections to Gentex's initial preliminary objections are now rendered moot by these decisions.

Gentex subsequently filed an amended complaint which drew similar preliminary objections from Crew.

First, Crew filed general generic preliminary objections in the nature of a *demurrer* pursuant to Pa.R.C.P. 1028(a)(4). These objections alleged generally Gentex failed to allege the essential elements of a cause of action for breach of contract.

The gravamen of these objections seems to be that since Gentex was subsequently awarded a contract from the USAF, they can have no damages.

This argument is disingenuous and devoid of merit. The terms of a new award to Gentex by the USAF may be more unfavorable than originally anticipated in 2002. Crew did not conceive of this as a possibility.

This initial general *demurrer* by Crew against Gentex is dismissed and denied.

The next objection by Crew to Gentex's amended complaint deals with count I and states that since the USAF has already awarded JSAM to Gentex there is nothing to enjoin. The past facts of this case upset this argument. The USAF awarded a contract to Scott on 2002 and it had to be rebid. Could this happen here? It already has; therefore, this objection by Crew to count I of Gentex's amended complaint is also dismissed and denied.

Crew's next objection goes to the failure of Gentex to attach writings upon which it explicitly bases its breach of contract claim is based in violation of Pa.R.C.P. 1019(i). The allegations by Crew is that Gentex's claim fails to attach a copy of the 2000, 2002 and 2005 JSAM system requirements which is the basis for Gentex's claim not the teaming agreement.

First, this is a breach of contract claim and the contract alleged to be breached is the teaming agreement. Pa.R.C.P. 1019(i) allows for a writing not to be attached if it is already in possession of both parties. See *McClellan v. HMO of Pennsylvania*, 413 Pa. Super. 128, 145 n. 10, 604 A.2d 1053, 1061 n. 10(1992, app. denied, 532 Pa. Super. 664, 616 A.2d 985 (1992).

Crew has never denied not having their copy of the teaming agreement. The system requirements for 2000, 2002 and 2005 have no bearing on the bilateral relationship between Crew and Gentex. Objection dismissed and denied.

Next is Crew's objection to count II alleging a violation of the Pennsylvania Uniform Trade Secrets Act pursuant to 1028(a)(4). The allegation is Gentex fails to state a legally sufficient substantive claim because the contract's choice of law provision designates the trade secrets law of the State of California to govern. We agree. This objection thus is granted. It has previously been determined by this court that substantive California law governs and that represents the law of the case.

Crew's next objection is to count III of Gentex's amended complaint and it is redundant. It mirrors the general and generic objection Crew originally made saying there is nothing left to enjoin. It is similarly dismissed and denied for the same reasons originally noted.

Crew's next three preliminary objections address three counts dealing with the California Uniform Trade Secrets Act. They are all denied as an improper attempt to challenge the evidence underlying the claims rather than the sufficiency of the allegations comprising the amended complaint. All three objections are dismissed and denied.

These dispositions render and make moot most of Gentex's preliminary objections to Crew's preliminary objections. The only exception being an objection granted to preclude use of Pennsylvania's trade secrets law. Since this has already been ruled upon and is now the law of this case, Gentex's preliminary objection to Crew's preliminary objection is dismissed and denied.

A comprehensive order consistent with this memorandum will follow.

## ORDER

And now, March 25, 2011, upon due consideration to all preliminary objections filed, the responses thereto, all supporting briefs and the able verbal and written arguments of counsel, and the court's own independent research as reflected in the forgoing memorandum, it is hereby ordered and decreed as follows:

(1) Gentex's six *demurrers* to counts III, IV, V, VI, VII and VIII of Crew's amended counterclaim are all in total dismissed and denied.

(2) Gentex's motion to strike count IX of Crew's amended counterclaim is dismissed and denied.

(3) Crew's preliminary objections to Gentex's preliminary objections to Crew's amended counterclaim are all now rendered moot by the court's decision at paragraphs 1 and 2 above.

(4) Crew has filed eight preliminary objections to Gentex's amended complaint. All are dismissed and denied in total with the exception to the objections to applying Pennsylvania's Uniform Trade Secrets Act which was granted since the court had previously determined that the choice of law proviso in the teaming agreement required that California substantive law be applied.

(5) All of Gentex's preliminary objections to Crew's preliminary objections were rendered moot by the court's decision of denial noted at paragraph 4 above. Their one remaining preliminary objection to the use of

California substantive law is dismissed and denied for the reasons stated at paragraph 4 above.

(6) Crew is to answer Gentex's amended complaint within twenty (20) days of the date of this order.

(7) Gentex is to answer Crew's amended counterclaim within twenty (20) days of the date of this order.

It is so ordered.